## Coryell *v.* Dubois Borough, Appellant.

*Contract—Municipal contract—Extra work—Additional work— Construction of contract.*

1. Where a contract for the construction of a dam for the water supply of a borough classifies the work in distinct items, such as excavating, masonry, grubbing, etc., and fixes a rate price for each separate item, and also specifies the approximate amount of work and material for each item, and provides that additional work over and above the estimate is to be paid for at contract price for work of its class, and the contract further specifies that "extra work" is that "for which no price is fixed in the contract, and which is not covered by the contract sum or the specifications," the mere fact that the condition of the ground requires from the contractor a much larger amount of the various kinds of work itemized in the contract than that estimated, and that such additional work is at a much greater cost to the contractor than the rate specified in the contract, does not make such additional work "extra work," within the meaning of the contract.

2. Where a building contract provides for a deduction of a stated amount from the contractor's compensation for each day of delay after a time specified, the owner cannot claim such deduction where he has made no objection to the delay and by his conduct has given the contractor grounds for believing that the provisions of the contract as to the penalty for delay would not be enforced.

Argued April 20, 1909. Appeal, No. 266, Jan. T., 1908, by defendant, from judgment of C. P. Clearfield Co., Dec. T., 1904, No. 31, for plaintiffs on case tried by the court without a jury in suit of B. H. Coryell and O. B. Bovard, doing business as The Coryell Construction Company, v. Dubois Borough. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Modified and affirmed.

Assumpsit to recover a balance due on a municipal contract.

The case was tried by ORMEROD, P. J., specially presiding without a jury under the provisions of the Act of April 22, 1874, P. L. 109. The facts of the case are stated in the opinion of the Supreme Court.

The court entered judgment in favor of the plaintiffs for $32,135.91.

*Error assigned* was in entering judgment for plaintiffs.

*Krebs & Liveright,* with him *David S. Herron,* borough solicitor, *Pentz & Calkins* and *Oscar Mitchell,* for appellant.— The additional work was not "extra work:" Fay v. Lester, 32 Pa. Superior Ct. 437; Trexler v. Kuntz, 2 Lehigh County Law Journal, 208; Payne v. Roberts, 214 Pa. 568; Miller v. McCaffrey, 9 Pa. 245; Gillison v. Wanamaker, 140 Pa. 358.

*Thomas H. Murray,* with him *A. L. Cole, James P. O'Laughlin* and *Hazard Alex Murray,* for appellees.

OPINION BY MR. JUSTICE STEWART, October 11, 1909:

The plaintiff company engaged by written contract to construct for the borough of Dubois, as part of a projected municipal water supply system, a section of the work designated in the plan as Anderson Creek dam or reservoir, in accordance with certain specifications, for the sum of $24,482.30. This price was based on estimates furnished by the borough as to the probable amount of work and material that would be required. Had there been no departure from the original plans and specifications, these estimates would have proved sufficiently accurate, and no controversy would have arisen. It rarely happens, however, that constructive work of this character is completed in exact accordance with the original specifications, for the reason that actual conditions below surface can only be known as the work is proceeded with, and disappointment with respect to these necessarily involves change in some degree. This contract contemplated such contingency, and, as we shall see, provided against it, both with respect to the rights of the borough, and the compensation to be paid the contractor. In the specifications furnished prospective bidders the work was classified according to the kind and character, as, for instance, grubbing, excavating, masonry, puddling, etc, each being made a distinct item, and with each item was given the approximate amount required under the estimates. The plaintiffs' bid specified in detail the rate price at which it would furnish the labor and mate-

rial for each separate item. The sum total, based on the approximate quantities of each, was $24,482.30, and this was expressed in the contract as the price the borough was to pay for the completed section. The contract provided that the water committee, representing the borough, should have the right to make any alterations in extent, dimensions, form or plan of the work either before or after the commencement of construction, and further, that for any increase in quantity of work or material that should result from any such change the plaintiff company should be paid at contract rate for work or material of its class. The first disappointment in estimates came in connection with the excavation for the dam. It was expected that rock bottom would be reached at a depth of seven feet below the spillway at the breast, and at twenty-seven feet below the extreme top at the other part of the dam, and the amount of excavating that would be required was estimated at 7,000 cubic yards. These depths were reached without discovering rock bottom, and the water committee required the plaintiffs to continue excavating. The work was proceeded with until the amount excavated more than doubled the original estimate. As a result, the amount and extent of masonry required for the breast of the dam was correspondingly increased, that is to say, from 1,200 cubic yards to 2,944; and instead of a surface of ten acres a clearing of nearly forty-four acres was required. If this additional work in kind and character fell within the classifications defined in the specifications, then, barring a certain disputed item of credit to be considered later, the plaintiff company has been paid in full. Its contention, however, is that it was extra work for which no price was fixed in the contract, and in the present action it seeks to recover as on a quantum valebat for work and labor done in this regard. The case was tried without a jury, and resulted in a judgment for the plaintiffs in the sum of $32,135.91. The appeal challenges both the facts as found by the learned trial judge and his conclusions of law as well. However lacking in support some of the findings of fact may be, these are not only of questionable relevancy, but, with a single exception to be referred to later on, they are in

themselves unimportant; for after all the case turns upon the construction of the contract between the parties. The admitted facts are quite sufficient to disclose the relation of the parties to each other and to the subject-matter, while the contract itself is neither obscure nor ambiguous. What the parties contracted for was a completed dam or reservoir. This involved more or less uncertainty as to the amount and extent of work required, and against this provision was made—additional work over and above the estimate was to be paid for at contract rate for work of its class. It involved as well a possibility that conditions unforeseen would require a kind and character of work unlike that required to complete the work according to the original plans. Against this also was provision made—such work is designated in the contract as "extra," and is there thus defined: "It is understood that extra work, as considered in the contract or specifications, is work that the contractor is required to perform and for which no price is fixed in the contract, specifications or proposal, and which is not covered by the contract sum or the specifications." The question then resolves itself into this, Was this work for which plaintiffs claim additional, or was it extra? The amount of work claimed in excess of the original estimate is not in dispute; nor is it denied that the plaintiffs were required by the borough to do this work. Manifestly it is not covered by the contract sum of $24,482.30. All that remains, therefore, to inquire is, Was it work for which a rate was fixed in the contract; in other words, did the work fall within the classification? It is not attempted to differentiate it in any way from that classified in connection with the original estimates except in the matter of cost. The masonry was the same in kind and character; so too the excavation, and so too the clearing; the difference was in the facility in doing these several kinds of work. As the depth was increased, more labor was required to accomplish the same results, and other instrumentalities had to be employed and other conveniences provided. A necessary result of increased depth would be increase of cost. The learned trial judge held this circumstance—increase of cost to the contractor—conclusive in favor of plaintiffs' con-

tention that the work was not embraced within the classification, but was extra within the meaning of that term as used in the contract. We quote his ruling: "The true test of classification must be the cost of doing the work, and any change of the conditions which would materially increase the cost must necessarily change the classification. The evidence clearly shows that the increased depth greatly increased the cost of doing the work requiring different and more expensive equipment. This applies also to the excess masonry. Not only was the expense of placing the masonry in position increased greatly, but the large amount of the increase, from 1,200 yards to 2,944 yards, must be considered in determining whether the same conditions existed. The cost of the masonry was largely controlled by the convenience of obtaining the stone. The evidence shows that there was sufficient in the vicinity to have supplied the amount named in the specifications. The increase of 1,744 yards changed the conditions which existed when the contract was made. The plaintiff was required to go to a great distance and to a very large expense to procure the extra amount of stone, and it would be unreasonable to require him under such changed conditions to be bound to supply the same at the price named." To this we cannot give our assent. It would determine the question in controversy not by the terms of the contract, but by a supposed rule of construction which is supported by no citation of authority, and which bears marks of too recent invention. There can be no true test of classification other than the understanding of the parties. The law prescribes no rules to govern with respect to matters of this kind; but leaves the parties free to group and classify for purposes of contract according to any standard or system they may choose to adopt; and when controversy arises all it seeks to do is to ascertain, as the true test, the intention and understanding of the parties. When the contract is in writing, to ascertain such understanding resort must be had to the instrument itself, and except that be ambiguous or obscure it alone is to be consulted. There is no reason why work may not be classified according to the conditions under which it is done; but there

is nothing to require it; it may often be more intelligently and
satisfactorily classified according to its own nature and general
character.  When by the contract it is classified according to
the latter method, it is only reasonable to suppose that con-
ditions were considered by the party agreeing to do the work,
and that this in some degree determined his bid.  Unques-
tionably these did enter into the plaintiff's bid in this case,
even though we limit the bid to the quantity of work as origi-
nally estimated, for otherwise the plaintiff must have expected
to do like work at a depth of twenty-seven feet at the same
cost to itself as work at the surface, which is not supposable.
If excavation and masonry to a depth of twenty-seven feet
may be classified and made subject to a uniform and fixed
rate of charge, why might not that carried to a greater depth
be classified in the same way?  That the parties here did so
classfy it- is we think beyond question.  Though the plans,
specifications and estimates of quantities which were prepared
by the defendant and furnished to prospective bidders, had
regard to a dam of certain extent in depth and surface, as was
necessarily the case, plaintiff's undertaking was not to con-
struct a dam limited in extent by plans and specifications,
but one of such dimensions as in the judgment of the water
committee would meet public requirements, the plans and
specifications to be observed in kind and quality of work.  The
enlargement of the work beyond the estimates was quite as
much the subject of the contract as was the work within the
estimates.  This feature of the contract calls for some em-
phasis, since it seems to have been entirely overlooked.  It
has determining significance in connection with nearly every
question that was raised on the trial of the case.  For in-
stance, the plaintiff rested its claim for extra compensation
for clearing and grubbing, on the ground that the enlargement
of the dam beyond the estimated ten acres of surface required
both a longer haul and a second removal of debris; that rely-
ing on the estimate, plaintiff deposited the debris from the ten
acres on parts immediately adjacent, and by the enlargement
was compelled again to remove it.  A plain answer to this is
to be found in the plaintiff's undertaking.  It undertook to

build a dam of greater area than ten acres if the water committee directed; and in choosing to deposit the debris from the ten acres on parts adjacent it took the risk of a second removal being required by any enlargement. Again, the claim for extra compensation for masonry is rested partly on the fact that material sufficient in amount for the estimated quantity was easily obtainable at convenient distances from the place of work; that the plaintiff company regulated its bid accordingly, but was obliged to go to a greater distance to procure material demanded for the enlargement, and there obtained it at greater cost. The answer here is the same. The contract was for such amount of masonry as the water committee would require. If plaintiff in determining its bid assumed that none would be required beyond the estimate, it was simply a mistake or oversight, which ordinary prudence would have avoided. The learned judge does not find that bad faith was practiced in preparing the estimates of work that would probably be required, but it is evident that he was of the opinion that the plaintiff was misled by the estimates. In the light of the contract what has that to do with the case? Suppose it to be so, the claim here is not for work embraced in the estimates, but for work outside. It is impossible to understand how the estimates could have misled as to the kind and character of such work. If the plaintiff in determining its bid—the rate at which it proposed to do the classified work—had regard exclusively to the work required to complete the dam according to the plans and specifications, it must have been either because it was unobservant of the terms on which the contract was to be let, or because it assumed with mistaken confidence that no enlargement would be demanded. In neither case would the law afford relief. When a contractor relies upon a bill of estimates furnished by a builder, the law implies no agreement on the part of the latter that the estimates are correct. The mere fact that the amounts are estimates puts the contractor upon inquiry. If he is misled by any misstatement of fact in connection with the estimates or by deceit of any kind calculated to induce him to accept the estimates as veritable, he would

have ground for equitable relief; but nothing of the kind is here alleged. All that was told the plaintiff as to the explorations made on which the estimates were based was admittedly true in fact. In determining whether the work for which extra compensation is here claimed falls within the classification, we have a sure guide in the contract which is made to embrace plans, specifications, proposal and the written agreement. It is so precise and clear in its terms that the introduction of expert testimony as to the true test of classification was without excuse. First of all there is the express provision in the specifications that "excavations shall be made of such dimensions and carried to such depths as the engineer shall decide, and all work done to the lines and grades to be given by him." If we turn to the plaintiff's proposal which follows accurately the plans, and is in substance incorporated in the written agreement, we find this, "And we hereby further propose that in case of any increase or diminution in the various quantities of work or material as given in the specifications, the value of the same shall be allowed or deducted from the contract lump sum according to the following schedule: grubbing and clearing, per acre, $50; earth excavation, per cub. yd., 28 cts.; rock excavation, per cub. yd., $1.50; puddling excavation, per cub. yd., $1.00; embankment, main, per cub. yd., 33 cts.; embankment, side, per cub. yd., 28 cts.; rubble masonry, per cub. yd., $3.75; cut stone, per cub. yd., $15; concrete masonry, per cub. yd., $4.30." Is there any room for doubt as to what was here meant by "increase of work," in view of the above provision that the depth of excavation was to be determined by the borough engineer regardless of estimated depth, and the further provision that the enlargement of the plant rested in the discretion of the water committee? How could increase of work otherwise result than from a change of plan? Had the dam been constructed as originally designed, say to a depth of twenty-seven feet, the surface area and the grade being defined, any increase of work over and above the estimate would have been inconsiderable, except as someone's mathematics were grossly at fault. With extent and depth not ascertained, but to be determined as

the work was proceeded with, the increase was indefinite, and might, as in this case it did, exceed by double the original estimate.   Is it likely that the parties in making this stipulation for increase of work had regard to an increase which was not likely to happen, and which if it did would be of slight importance comparatively, and had no reference to a condition expressly provided for and which might result in wide and serious departure?   The best construction of a contract is that which is made by viewing the subject of the contract as the mass of mankind would view it, for it may be safely assumed that such was the aspect in which the parties themselves viewed it.   A result thus obtained is exactly what is obtained from the cardinal rule of construction: Schuylkill Navigation Company v. Moore, 2 Whart. 477.   Applying this rule here we are left in no doubt as to the intention and understanding of the parties to this contract.   Our conclusion is that the work here sought to be recovered for was classified by the contract, and that the rate of compensation therefor was fixed by the same instrument.   It is absolutely impracticable to recite and review in this opinion all of the thirty-nine assignments of error, nor is it necessary.   It is sufficient to refer specifically to the nineteenth.   The court was asked to hold "that the price for all work done by plaintiff was fixed in the contract."   The refusal of the court to so hold is here assigned, and the assignment is sustained.   This conclusion eliminates the question whether the defendant waived the provision in the contract that no claim for extra work should be made unless it shall have been done in obedience to a written order from the water committee.   The work claimed for not being extra work within the contract meaning of that term, the provision has no application.   Nor is it necessary to discuss the question raised as to the authority of the engineer to change the terms of the contract.   It is of no consequence that when directed by the engineer to excavate beyond the twenty-seven feet level the plaintiff demanded of that officer extra compensation, and was told by him that his claim should be put before the borough council when the work was completed.   This was no acquiescence in·plaintiff's de-

mand by the engineer. · At most it would be but a waiver of
the provision as to the manner in which, and the time when,
demand for extra work was to be made; and even as to this,
the engineer's authority to bind the borough would be more
than questionable.  To hold that such conversation with the
engineer was an admission on the part of the borough that the
work beyond the twenty-seven feet line was unclassified work,
and not included in the schedule of prices, would be not only
to give the conversation a significance which the language
will not justify, but to identify the engineer with the borough
in a way not contemplated by the contract.

The contract provided that the plaintiff was to be paid in
monthly payments based on estimates by the engineer of the
value of the work done.    These estimates were regularly made
as the work was proceeded with, and the plaintiff was paid
each in full, excepting the last for $1,995.15, which the defend-
ant withheld under a claim of right to be considered.    There
is no finding by the court that questions in any way the ac-
curacy of these estimates either with regard to the amount of
work actually done or its value, if measured by the scale of
prices which was to govern for classified work.    The amount
in controversy is therefore reduced under our ruling to this
sum.    It was stipulated in the contract that the work was to
be completed within five months from June 6, 1901, and that
for each day it remained unfinished after the limit $15.00
should be deducted from the plaintiff's compensation, as as-
certained and liquidated damages for engineering and inspect-
ing expenses.    By agreement the time was extended for an-
other five months; but the work was not completed for more
than a year and a half after the expiration of the extension.
For this breach of the agreement the defendant claims as dam-
ages what remained unpaid on the contract price.    The find-
ings of the court on this branch of the case are most meager
and unsatisfactory.    One is that the increase of the work
made it impracticable, considering the difficulty attending it,
for the plaintiff to complete it within the specified dates; an-
other is that if it were extended in proportion to the cost of
the increase no more time was taken by the plaintiff than it

was entitled to.  It does not follow from the fact that it was impracticable to complete the work within the specified dates, ten months at farthest, that the whole of two years was required; nor was there warrant for holding that the cost of the work had anything to do with fixing the time for its completion.  The trial judge we think properly refused the credit claimed by the borough, but for wholly different reasons than those he assigns.  The evidence we think clearly shows such acquiescence on the part of the borough in the delay that the enforcement of its present claim would be unjust and inequitable.  We have been compelled to search through the evidence for the facts.  If it anywhere appears that dissatisfaction with the delay was expressed by the borough authorities for months after the extension expired, such evidence has escaped us.  It was not until September, 1903, within two months of the completion of the work, that any formal notice was served on the plaintiff.  Nothing whatever had been said or done until then indicating a purpose on the part of the borough to claim anything for delay; but on the contrary by its course of action it gave the plaintiff abundant ground for believing that the provisions of the contract would not be enforced against it.  "The waiver or extension may be implied as well as expressed.  When after the time of the completion of the work, the builder assents to the continuance without objection to a delay, he will be deemed to have waived the provision as to the time of the performance, especially when the continuance of the work is at the expressed request of the builder as upon his promise to pay therefor when completed, or when on the continuance of the work at the request or assent of the builder he makes partial payments to the contractor for work performed:" 30 Am. Eng. Cyl. of Law, 1259, and the authorities there cited.  Our conclusion from a review of the whole case is that the work done by plaintiff for which extra compensation is claimed was not extra work, but such work as fell within the classification expressed in the contract; and that it was error to allow more than schedule rates therefor.  There is admittedly due to the plaintiff the sum of $1,995.15 on the final estimate of work done.  Under our ruling the plaintiff

is entitled to recover in addition the sum of $2,965.05 which was improperly withheld on account of engineering expenses. The whole amount of plaintiff's recoverable claim is, therefore, $4,960.20, with interest from December 4, 1903. The judgment entered requires to be modified by reducing it to this amount, and as so modified the judgment is affirmed.