## REBEKAH ASSEMBLY, INDEPENDENT ORDER OF ODD FELLOWS OF THE STATE OF INDIANA, *v.* PULSE ET AL.

[No. 7,037.  Filed November 22, 1910.  Rehearing denied April 20, 1911.]

1. CONTRACTS.—*Building.*—*Plans.*—*Extras.*—*Provisions Therefor.*—*Failure to Observe.*—*Complaint.*—A complaint for extra services for building a passageway incident to the construction of a building, 103 feet longer than called for by the specifications, the contract providing that the location of the building should be

determined by a committee and that no extras should be charged unless agreed upon beforehand and expressed in writing and attached to the contract, is bad, where it shows that the committee's choice of site necessitated the extra passageway and that no claim of a departure from the contract was made at the time, no written addition made to the contract and no claim made until after settlement according to the contract. *Cleveland, etc., R. Co.* v. *Moore*, 170 Ind. 528, and *Norton* v. *Brown*, 89 Ind. 333, distinguished. pp. 468, 475.

2. CONTRACTS.—*Building.*—"*Extras.*"—The word "extras," as applied to a building contract, imports work arising outside and entirely independent of the contract in question—something not required for its performance. p. 474.

From Bartholomew Circuit Court; *Marshall Hacker,* Judge.

Action by William C. Pulse and others against the Rebekah Assembly, Independent Order of Odd Fellows of the State of Indiana. From a judgment for plaintiffs, defendant appeals. *Reversed.*

*J. Frank Mann, Hord & Cox* and *Bennett & Davidson,* for appellant.

*Davison Wilson, Charles S. Baker* and *Ephraim Inman,* for appellees.

RABB, J.—Appellant and appellees entered into a written contract, by the terms of which appellees agreed to construct for appellant upon its grounds a certain building and covered passageway, that would connect said building with one already standing on said ground, for which appellant agreed to pay appellees a certain sum. The building and passageway were constructed by appellees, as required by the terms of the contract, and the compensation named in the special contract therefor paid to appellees by appellant. Afterwards this suit was brought by appellees to recover the value of labor performed and the material furnished by appellees in the construction of the passageway between the two buildings, based upon the theory that the compensation for such labor and material sued for was not covered by the price

fixed in the contract. The complaint was in two paragraphs, appellant's demurrer to each of which was overruled, the case put at issue, and a jury trial had, resulting in a verdict and judgment in favor of appellees.

One of the questions presented by this appeal, and the decision of which is vital to appellees' case, arises upon the action of the court in overruling appellant's demurrer to the complaint. Both paragraphs of complaint proceed upon the theory that the work and labor performed and the material furnished, for which compensation is sought to be recovered, were done and furnished under the written contract between the parties, and the contract is made part of each paragraph of the complaint. The material stipulations of the contract are as follows: "Said Pulse & Porter  *  *  *  in consideration of the agreements hereinafter expressed, hereby contract and agree to do all the work in the best and most faithful manner, and to furnish all the materials for a building to be erected at the Independent Order of Odd Fellows' Home, on said Independent Order of Odd Fellows' Home farm, near Greensburg, Indiana, on the ground and at the place designated by said Independent Order of Odd Fellows' Home committee, to be built on the lot as heretofore described, agreeable to the specifications and accompanying plans, prepared by R. P. Daggett & Co., architects.  *  *  *  In case of a disagreement between Pulse & Porter and Charles I. Ainsworth, hereafter named, as to plans and specifications, or kind and quality of material, it shall be referred to said architects, and the decision of said architects shall be final.  *  *  *  No extras will be allowed the party of the second part, nor any alterations made, unless they shall be ordered by Charles I. Ainsworth, superintendent in charge of the construction, and any extras or alterations must be in writing indorsed on or attached to this contract, and the cost of extras or alterations must be agreed upon beforehand, and expressed in writing on or attached to this contract.  *  *  *

The parties of the first part may at any time during the progress of said building make any alterations in the plans, materials or execution of the work, and they shall in no way affect or make void this contract, but will be added to or deducted from the amount of the contract, as the case may be, and the price agreed upon for said changes must be indorsed in writing on this contract. * * * For the faithful performance of this contract * * * by said parties of the second part, said first party hereby agrees to pay the sum of $43,985.'' The plans and specifications which formed a part of this contract were not made a part of the complaint, but each paragraph of the complaint averred that said specifications accompanying the contract provided for the construction of a two-story and basement building, and a covered passage-way on the grounds of the Independent Order of Odd Fellows Home, etc., and that the said passageway was understood by the parties to be a passageway connecting the old building with the new one.

It appeared from the averments of each paragraph of the complaint that the contract provided that appellant's building committee was to select the location whereon the proposed building, the construction of which was the subject-matter of the contract, should be located; that at the time appellees made their bid for the work, they had before them the plans and specifications referred to in the contract; that the drawings thus before them showed the buildings, between which the passageway was to be constructed, to be ninety-seven feet apart, but the building committee located the site of the new building 203 feet from the old one, and it is for the expense incurred in the construction of this additional extent of passageway that appellees claim a right to recover. It is thus affirmatively made to appear by the complaint that the contract between the parties expressly required appellees to construct a covered passageway between the two buildings, and expressly conferred upon ap-

pellant's committee the right to designate the location of the building to be erected.

The marrow of appellees' claim is that the plans of the work at the time the contract was made fixed this location at a point ninety-seven feet from the old building, and that the action of the committee, in locating the building where they did, changed the plans as fixed by the contract, and required appellees to build 106 feet more of passageway than the original plans called for. The complaint nowhere avers that appellees at any time before the completion of the building and the reception by them of the contract price therefor, made any claim to appellant's building committee, or the superintendent in charge of the work, that the construction of said passageway or any part thereof was any alteration whatever from the plans of the work as provided for in the contract, or made any claim that the construction of the passageway, as it was built, would entitle appellees to any compensation therefor in addition to the sum named in the contract as the price for the entire job. There is no attempt in either paragraph to charge that extra compensation for the construction of this passageway was agreed on beforehand by the parties, and the agreement expressed in writing, as required by the stipulations of the contract referred to. It seems to be appellees' theory that the written contract between the parties, although it obligated appellees to construct the passageway between the two buildings, did not in any other respect govern the rights and obligations of the parties in respect thereto; that the passageway as constructed was such a wide departure from the original plans of construction as to take appellees' right to compensation therefor entirely without the contract. We cannot concur in this view.

If it were true that appellant so radically changed the plans of the work contracted to be done as that the terms of the written contract did not apply to it, then appellees

were under no obligation to proceed with the work at all, and if they did proceed with it, without objection or question, leaving their employer to understand that they were proceeding in the work under the contract, they cannot, after the work is done, assert that the contract shall not determine their rights. If appellees thought they were entitled to extra compensation for constructing the passageway, on account of the fact, as they claim, that the building committee located the new building farther away from the old one than contemplated by the original plans, upon which they made their bid, it was their duty to raise the question before doing the work, and have it settled, as provided by their contract, and have the compensation fixed by agreement beforehand, and made a matter of writing. This was one of the express conditions of the contract between the parties, was a reasonable and just provision, and was intended to guard appellant from claims of the very character appellees now make in this case. *Shaw* v. *Turnpike* (1832), 3 Pen. & W. (Pa.) 445; *Davis* v. *Bush* (1874), 28 Mich. 432; *Hawkins* v. *United States* (1876), 12 Ct. Cl. 181; *Cleveland, etc., R. Co.* v. *Moore* (1908), 170 Ind. 328; *White* v. *Mitchell* (1903), 30 Ind. App. 342.

Our attention is directed by appellees to the case of *Cleveland, etc., R. Co.* v. *Moore, supra,* as an authority supporting appellees' contention that the change in the plans of the passageway, alleged in the complaint to have been made, had the effect of taking the work, and appellees' right to compensation therefor, out of the operation of the written contract between the parties. We have carefully considered the authority referred to, and, as we understand it, it is squarely against appellees' contention. In that case certain parties entered into a contract with a railroad company to do certain construction work, making cuts, building grades, laying tracks for extensive railroad yards, and carrying across the tracks of the railroad a public highway

on an overhead crossing. A clause in the contract between the parties provided that the location and plans of the work might be changed by the chief engineer of the railroad company, and that, if the change involved only an increase in the quantity of work, no extra compensation was to be allowed therefor, but such work was to be paid for at the contract price. A surety company became security to the railroad company for the faithful performance of the contract by the contractors. After doing a part of the work, the contractors abandoned the contract, and the surety company undertook to make good its obligation by completing the work provided for in the contract. After the surety company entered upon the work, the railroad company, through its engineer, made great and radical changes in the plan of the work, enlarged its scope to more than double the extent of what was originally required, and carried the public highway under, instead of over the railroad track by a subway. After the surety company had done a vast amount of work, it also abandoned the work, and sued the railroad company to recover, on a *quantum meruit,* compensation for the work that had been done, averring in the complaint that the work which it did under the direction of the railroad company was outside of and beyond the scope of the contract, and that the surety company performed the work in ignorance of the fact that it was not within the terms of the contract. There was a special finding of facts, in which, among other things, the court found that the work done by the surety company was outside of the scope of the contract, and that it was done and performed by it in ignorance of the fact that the terms of the contract did not require a performance of such work, and it was thereupon held by the court that the price fixed by the contract for the work did not govern the rights of the surety company to compensation, and judgment was rendered in favor of the surety company for the reasonable value of the work. The judg-

ment of the court below was reversed, upon the ground that the evidence did not warrant the finding of the court that the surety company performed the work in ignorance of the fact that it was without the scope and meaning of the special contract, and this fact was vital to the surety company's case.   We do not understand the court as holding in this case that if the surety company knew that the work was not within the scope of the contract, and still went on with the work, assuming to act under the contract, they could afterwards insist that the contract did not apply.

Here it is the contractor himself who is waging the action. It is not pretended that he was ignorant of the facts regarding the character of the work, the terms of the contract, and whether the work was within the scope of the contract. As before stated, his case is predicated upon the theory that the terms of the contract required him to perform the work. If parties enter into a special contract regarding any subject-matter, and afterwards, by agreement, change and modify the subject of the contract so that it cannot be identified by the contract, the special contract could not be held to apply to such changed subject, as it was very properly held in the case of *Norton* v. *Browne* (1883), 89 Ind. 333, to which we are referred; but this is not the case here. Here the principal subject-matter of the contract in question was the construction of the new building upon appellant's ground.   The erection of the passageway between the new and old buildings was but an incident in the major subject, and it was clearly in the contemplation of the parties that this passageway should be constructed wherever the new building might be located by the parties, and it is expressly alleged in the complaint that the contract was so understood when made, and the parties carried out this construction in the execution of the work.   Upon the facts stated in the complaint, appellees clearly had no right to any compensation for the construction of the passageway, additional to that provided for by the terms of the contract.

Judgment of the court below reversed, with instructions to sustain the demurrer to each paragraph of appellees' complaint.

Myers, J., not participating.

## On Petition for Rehearing.

Adams, J.—Appellees have filed a petition for a rehearing in this cause, supported by an able brief of their counsel. It is earnestly contended that the opinion of the court is erroneous, in that it does not correctly state the rule, as declared in the cases of *Cleveland, etc., R. Co.* v. *Moore* (1908), 170 Ind. 528, and *Norton* v. *Browne* (1883), 89 Ind. 333. We have carefully examined these cases, and adhere to the construction set out in the original opinion.

It is also insisted that the opinion is based upon the unwarranted assumption that the building of the additional 106 feet of covered passageway, for the cost of which this suit was brought, was but an incident in the erection of the new building, and within the terms of the original contract. It is admitted that the contract was for the erection of a new building, and connecting it with an old building by means of a covered passageway. The work was to be performed in accordance with the plans and specifications, and was to be completed within a certain time for the sum of $43,985. The drawings from which the bid was submitted showed a covered passageway ninety-seven feet in length, but the new building was so located that a passageway 203 feet in length was necessary to connect the buildings.

Appellees contend that the construction of the 106 feet of passageway, not shown on the drawings, was independent of the contract, and was not included in the contract price. Assuming this to be true, the assumption does not aid appellees. If this work was not included in the general contract, then it was extra work, which has been defined in the case of *Shields* v. *City of New York* (1903),

82 N. Y. Supp. 1020, 84 App. Div. 502, as "work arising outside and entirely independent of the contract—something not required in its performance."

The contract in this case, however, anticipating the possibility of extra work, provided in express terms therefor. It was stipulated that no extras would be allowed appellees, unless ordered by the superintendent; that such extras must be in writing, indorsed on or attached to the contract, and the cost of such extras agreed upon beforehand, and expressed in writing on or attached to the contract. It would be difficult for the parties to express their engagements in clearer or more definite terms.

The complaint sets out a copy of the contract, but fails to aver that the cost of the extra work was agreed upon beforehand, and expressed in writing on or attached to the contract. Without such averment, no cause of action was stated.

Rehearing denied.

Myers, C. J., not participating.