The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

## EMPLOYERS' CASUALTY CO. et al. v. WOLFE CITY et al.
### No. 1177—5165.

Commission of Appeals of Texas, Section A. March 12, 1930.

Lawther & Pope, of Dallas, for plaintiffs in error.

Bowman & Bowman and Clark, Harrell & Starnes, all of Greenville, and Jones & Jones, of Mineola, for defendants in error.

CRITZ, J.

The city of Wolfe City brought this suit in the district court of Hunt county, Tex., against T. A. Bradshaw and Employers' Casualty Company, a corporation. The following circumstances formed the basis of the litigation between the city and Bradshaw.

Bradshaw entered into a contract with the city to build a waterworks dam for it according to certain plans and specifications prepared by the city's engineer. The contract provided for a bond in the sum of $5,000. The Employers' Casualty Company furnished the bond. Bradshaw failed to complete the work so undertaken by him, and the city took charge and proceeded therewith until it had expended the sum of $2,152.60, but left same still incomplete because it had exhausted all available funds that the city could use for the purpose. The evidence shows and the jury found that it would have cost $3,000 for the city to finish the dam according to the contract.

The First State Bank of Wolfe City intervened in the suit seeking to recover from Bradshaw and the indemnity company about $3,800 alleged by the bank to have been paid out by it in settlement of claims of laborers and materialmen against Bradshaw. Also A. A. Humphrey intervened on a claim for work performed by him. Also others not necessary to mention here intervened.

The city prayed for a judgment against Bradshaw and the surety company for $1,222.80.

Trial in the district court before a jury resulted in a verdict on special issues and judgment thereon as follows:

(a) Judgment for the city against Bradshaw and the casualty company for $2,842.75, with interest and costs.

(b) Judgment for the First State Bank of Wolfe City against Bradshaw and the casualty company for $3,800, with interest at six per cent. and costs.

(c) Judgment for A. A. Humphrey for $95.55 against Bradshaw and the casualty company, with interest and costs.

(d) The judgment then contained the following provision:

"And it appearing to the Court, that there is on deposit with the intervenor, First State Bank of Wolfe City, Texas, a sum of $3,800.00 belonging to the City of Wolfe City, constituting a portion of the funds derived from a bond issue for the purpose of construction of the work in question and that had the work been

completed in accordance with said contract and said alterations thereof, the defendant, Bradshaw, would have been entitled to have the same applied to the payment of the several claims for labor established by the intervenor bank in this cause.

"The Court is of the opinion, that under the judgment in this case, the defendants are entitled to have the same applied now, as though the work had been completed by said Bradshaw.

"It is therefore, further ordered, adjudged and decreed by the Court, that the sum of money so on deposit in said bank, be applied towards the discharge of the judgment herein rendered as follows: $2,842.75 shall be applied in discharge of the judgment herein rendered in favor of the City of Wolfe City and the balance thereof shall be applied to the payment and discharge, so far as it will go, of the judgment rendered in favor of the said First State Bank of Wolfe City, Texas."

The surety company and Bradshaw both appealed to the Court of Civil Appeals for the Fifth District at Dallas, which court affirmed the judgment of the district court. 3 S.W.(2d) 527. Bradshaw and the casualty company both applied for writs of error to the Supreme Court, and both applications were granted.

We shall first proceed to dispose of the case as between the casualty company and the First State Bank. It is the contention of the casualty company that the bond furnished by it does not cover or embrace the claims for $3,800 herein sued for by the bank, and this contention is presented to this court by proper assignments The bank's claim is based on the following transactions:

After the contract between the city and Bradshaw had been entered into, and after the bond had been furnished and accepted by the city, and after the work had progressed to a considerable extent, up to which time the bank had no connection or interest whatever in the matter, it is shown that Bradshaw needed money with which to pay claims of laborers and materialmen who had worked on, and furnished material for the project; that the laborers had quit work, and both the laborers and materialmen were demanding their money; that Bradshaw applied to the bank for money with which to pay the above claims; that the bank was willing to advance the money, but desired to be protected in the premises; that the bank's attorney advised that, if Bradshaw would give an order on the city for the amount of the claims, and agree that the bank should take the place, and stand in the shoes of, those holding the above-mentioned claims, it (the bank) could, with safety, advance the money, but said attorney advised as further precaution that the bank take from each laborer and materialman an assignment of his claim and lien. It seems that these arrangements were agreed upon at a meeting between the city authorities,

Bradshaw, and those representing the bank. The indemnity company had nothing to do with the transaction and was not consulted in regard to the same; also the laborers and materialmen were not consulted, and did not agree to anything with reference to the matter at this time.

After the above transaction and agreements, the bank, from time to time, advanced the money to Bradshaw to pay the laborers and materialmen owed by him, and at the same time took Bradshaw's notes for the amounts thus advanced. The president of the bank testified as follows with reference to the taking of these notes:

"When I put this money to Bradshaw's credit in the bank he gave me notes for it, I still have those notes. I did not say to Mr. Bradshaw, after the men had all gotten their money and probably after the City had refused to accept the orders given by Bradshaw, that he did not owe me a cent, that I was looking to the City for payment of this money, I did not make that statement, I told him that he, the Bonding Company or the City owed me the money.

"When I paid out these amounts to the laborers and materialmen I had to handle the matter in a way that would meet the requirements of the banking law and the bank examiners, and it had to be done by taking notes from him, it could not be handled as an overdraft. I put the notes in the assets of the bank and in order to make it balance, I deposited the money to Bradshaw's credit. If I had not done that and had honored his checks, the result would have been an overdraft and that is against the banking laws of the State."

When the money was thus advanced to Bradshaw, it was passed to his credit on the books of the bank. Bradshaw then issued checks upon the bank to the laborers and materialmen in full payment and satisfaction of their claims against him. All of these checks had written upon their face words to show that they were in payment of labor or material used upon the city dam. These checks were delivered by Bradshaw to the laborers and materialmen, and were all cashed by the bank. Some of the checks were cashed directly at the bank by the persons to whom they were payable, and some of them were cashed at the stores, and then cashed by the bank. After all these checks had been cashed by the bank, the bank sent its agents to the various laborers and materialmen and procured from them written assignments of their respective original claims and liens; such assignments being dated back to the time the check to such party was cashed. The laborers and materialmen who received the checks were not parties to the original agreement and transactions between Bradshaw and the bank, and, so far as this record shows, had no knowledge thereof. Neither did the casualty

company have any connection with this agreement or knowledge thereof. Also it is conclusively shown that there was no understanding between the bank and the parties receiving Bradshaw's checks, at the time they received and cashed the same or before, but such parties received such checks in full payment and satisfaction of their claims against Bradshaw. Furthermore, it is conclusively shown that no consideration was paid to such parties when the assignments to the bank above mentioned were procured.

Under the above facts, the Court of Civil Appeals holds the bank subrogated to the rights of the laborers and materialmen and protected by the bonds. This holding is error.

As we understand the contentions of the bank, it here recognizes that the assignments from the persons receiving the checks did not operate to give it a claim against the casualty company on the bond; but, whether such is recognized by the bank or not, we so hold. We understand in this connection that the bank contends that the agreement between the debtor, Bradshaw, and itself, together with the other circumstances, is sufficient to work subrogation of the creditors' security in favor of the bank. We cannot sustain this contention. It is true that subrogation may accrue on an agreement between a volunteer and a debtor as held in Fievel v. Zuber, 67 Tex. 275, 3 S. W. 273, and other authorities cited by the Court of Civil Appeals. However, these authorities do not have application here, for the reason that Bradshaw had no authority to deal with the bond, which is the property, on which the lien was sought to be fixed by the transactions and agreement between him and the bank. In the case at bar, neither Bradshaw, the city, nor the bank had any authority to deal for the casualty company. At the time the bank advanced the money, it took no assignment of the lien of laborers or materialmen, and it (the bank) had no claims against the bond that it was necessary for it to protect by paying the laborers and materialmen. Such being the case, it was a pure volunteer, and is not entitled to any judgment against the bonding company. Certainly the bank could not be subrogated to any rights of the laborers or materialmen against the bond by virtue of its agreement with Bradshaw, for the reason that Bradshaw had no authority to deal with the bond. There is no equitable subrogation in favor of the bank against the bond, because such cannot exist when payment is made without legal obligation, and without being required for the preservation of some right of property in the party paying. Oury v. Saunders, 77 Tex. 278, 13 S. W. 1030.

We now come to consider the case with reference to the city and Bradshaw. Bradshaw's pleading and proof to the effect that the number of yards of dirt put in the dam by him is much larger than the number indicated by the city's pleading and proof. The issue this made was not in any wise submitted to the jury. Bradshaw seasonably requested submission of an issue in these words: "How many cubic yards of dirt had the defendant, T. A. Bradshaw, placed in the dam before he quit the job?" This requested issue was refused by the judge. The state of the case was such as to prevent this issue thus requested from having relation to mere evidence, and refusal to this submission was prejudicial error.

It is contended that the judgment of the city against Bradshaw is greater than prayed for by the city. We pretermit any discussion of this matter, as it will not probably arise on another trial.

We recommend: (a) That the judgments of the Court of Civil Appeals and the district court awarding the First State Bank of Wolfe City, Tex., a judgment against the Employers' Casualty Company for $3,800 interest and costs be reversed and here rendered for the casualty company, denying the bank any recovery against the casualty company; (b) that the judgments of both said lower courts in favor of A. A. Humphrey for $95.55 be affirmed; (c) that in all other respects the cause be reversed and remanded for a new trial; and (d) that the city and the bank each pay one-half the costs of appeal.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals for Humphrey affirmed. Judgments of the district court and Court of Civil Appeals for bank against Employers' Casualty Company for $3,800, interest and costs, reversed, and judgment rendered denying the bank a recovery from the casualty company. In all other respects, cause remanded for new trial, and costs taxed as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.