**CITY OF HOUSTON, Appellant,**

v.

**L. J. FULLER, Inc., Appellee.**

No. 13187.

Court of Civil Appeals of Texas.

Houston.

March 6, 1958.

Geo. D. Neal, City Atty., Homer T. Bouldin, Senior Asst. City Atty., Houston, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, Austin C. Wilson, Houston, for appellee.

BELL, Chief Justice.

This suit was brought by appellee to recover $7,431.40 allegedly the balance due under a contract it had performed for the appellant, which called for construction of a sanitary sewer line north of Liberty Road and south of Kashmere Gardens. On trial before the court without a jury, judgment was rendered for the amount for which suit was brought, plus $1,000 as attorney's fees, attorney's fees being allowed under Article 2226, Revised Civil Statutes, because suit was to recover for labor and material furnished.

On December 31, 1952, the contract was duly executed. Generally, it provides that appellee shall within 120 days construct the sewer line according to the plans and specifications which are made a part of the contract. The consideration stated was $67,-784. There is a general form of contract, which is printed, which was used by appellant. In this opinion where we use "general contract" we refer to such printed form as distinguished from the plans, specifications or special provisions, though the latter are by reference a part of the contract to be performed by appellee.

The general contract provided that appellee should furnish all tools, labor, material, machinery and appliances for the construction of the sanitary sewer in accordance with the plans, specifications and drawings of the Director of Public Works and Engineering and should construct such sewer in a good, sound and workmanlike manner. While the stated consideration in the general contract is $67,784, this amount represents the aggregate of the unit prices contained in the bid of appellee. Of course, the bid is expressly made a part of the contract. The general contract provides that when the work has been completed in accordance with the plans and specifications and has been accepted by the appellant, the appellant shall pay appellee "The unit prices set out in full in the contractor's bid proposal." At this point, it should be noticed that the bid sheets are composed of the following columns headed in the manner stated:

| Kind of Work | Unit of Work | Approx. Quan. | Unit Price Both Dollars & Cents in Words. This Column controls Figures | Total in |
|---|---|---|---|---|

The bid sheets are those furnished by appellant and are mimeographed. The first three columns are filled in by the appellant so as to give the bidder the items on which he bids, the unit of measure and the approximate quantity. The last two columns are filled in on the typewriter and are the amounts bid by the appellee—first, his unit bid, and next, the total for each item. The contractor's proposal signed by appellee states that appellee proposes to construct the sanitary sewer and appurtenances in

accordance with the enumerated plans and specifications "for the following unit prices." The general contract in paragraph 4 provides as follows:

"The contractor has carefully examined the surface of the site and has made sufficient test holes to fully satisfy himself that such site is a correct and suitable one for this work and he assumes full responsibility therefor. The provisions of this contract shall control any inconsistent provisions contained in the specifications. All plans and specifications have been read and carefully considered by the Contractor, who understands the same and agrees to their sufficiency for the work to be done."

Paragraph 8 of such contract is as follows:

"The plans, profiles and specifications approved by the City Council are a part of this contract. The following are in particular, whether or not the same be attached hereto, a part of this contract and every covenant and undertaking therein is as fully binding upon the parties hereto as if here set forth at length, to-wit: (a) The Notice to Bidders and the Contractor's Bid Proposal, (b) Affidavit of non-Interest on the Part of City Officials, Employees, etc.; (c) Specifications, 'General Conditions,' Form E–10, Revised June 1, 1948, and (d) All of those specifications and drawings which are referred to in the Contractor's Bid Proposal. In case of conflict, any provision of the foregoing document shall prevail over any conflicting provision in any of the specifications, and any provision in a special item or specification pertaining particularly to the project herein referred to shall control over any inconsistent provision of the 'General Conditions.' "

Paragraph 22 of the "Specifications— General Conditions" reads as follows:

"Local Conditions.—Bidders shall satisfy themselves as to local conditions affecting the work, and no information derived from maps, plans, specifications, profiles or drawings, or from the Engineer or his assistants, will relieve the Contractor from any work or from fulfilling all of the terms of his contract. The accuracy of the interpretation of the facts disclosed by borings or other preliminary investigations is not guaranteed. Each bidder or his representative should visit the site of the work and familiarize himself with local conditions; failure to do so when intelligent preparation of bids depends on a knowledge of local conditions may be considered sufficient cause for rejecting a proposal."

There is a mimeographed sheet entitled "Special Provisions" and this special provision reads as follows:

"Special Item: 'Sand Stabilized Shell in Trench Bottom'—Where the earth in the trench bottom does not, in the opinion of the engineer, provide a suitable foundation for the sewer, the contractor shall, where ordered by the engineer, place sand stabilized shell in the trench bottom, under, around and over the sewer. Where this work is ordered, the contractor will be provided with a special plan or other instruction showing the depth of this material to be placed below the grade of the sewer and the height of material above the grade of the sewer."

In the Specifications, Item 3:14, that especially apply to sewer construction is this provision:

"Special plans for construction of sewers in unstable soil will be provided as found necessary during the progress of the work. The contractor will be paid for such work at the unit prices bid for items involved, as concrete, timber, or any other items upon which unit prices have been secured and deemed advisable to use."

These are the parts of the contract which we deem controlling in the disposition of this appeal.

The appellee in his petition alleges that he examined the construction site and drilled numerous test holes to a point 1 foot below grade depth and this investigation revealed a suitable site for this construction work. It further alleges that as provided in said contract, as work progressed, the City Engineer directed that between stations six plus 30 on Salina Street and 15 plus 11 on Bigelow Street appellee place sand stabilized shell in the trench bottom. The contract did not state how much shell was to be placed in the trench bottom, but left this to be determined as work progressed. Between these stations, when this area was reached, the City Engineer directed that 4 to 6 inches of shell be placed. This was done. Before all of the work was completed, it was discovered that there were five breaks in the line between the stations mentioned. These were not due to defects in workmanship or materials, but were occasioned by heavy rains occurring in May, 1953, that caused water to rise and at the points of the breaks it appears that some distance below the pipes there was quicksand, though such was not known at the time the pipe was laid. The ground was dry when the 4 to six inches of shell was used at the direction of the City Engineer and such amount seemed sufficient. When the water rose in the trench the pipe sagged and caused the breaks. At the direction of representatives (inspectors) of the engineer the appellee corrected these defects and it is for the expense in so doing that appellee sought relief.

The appellant contends that the city is no warrantor that its plans and specifications are sufficient, but that when appellee made the contract he agreed to furnish a finished product in accordance with the plans and specifications for the consideration expressed in the contract, and this appellee is bound to do at all events. All risks, appellant says, are on the appellee. Appellant also says that this is extra work, and recovery cannot be had because it was not directed to be done by writing and that the City Controller had not certified that funds were available to pay for the work, as required by the city charter. Also, the appellant says the city is not liable for attorney's fees under Article 2226.

Appellee contends this is a "unit price contract" as distinguished from a lump sum contract, and that the rule of Lonergan v. San Antonio Loan & Trust Co., 101 Tex. 63, 104 S.W. 1061, does not apply. Also that this is not extra work, but is work done within the terms of the contract since the "General Conditions" expressly provide that in sewer construction the amount of stabilizing material to be placed in the bottom of the trench shall be determined as the work progresses and payment should be made therefor at the unit prices. Also a special provision set out that the engineer should order sand stabilized shell in the trench bottom where in his opinion the bottom of the trench itself did not afford sufficient stability. These being matters within the terms of the contract, the original certificate by the Controller suffices. Too, the engineer gave only oral instructions, but this was customary though the contract called for written directions, and under such circumstances oral direction suffices.

The city replies that the above quoted provisions of the "General Conditions", "Special Provisions" and "Specifications" might be controlling except that the "General Contract" expressly provides its provisions shall control in case of inconsistencies, and that the general contract provides that all risk as to the sufficiency of the plans and specifications is assumed by appellee.

Testimony was taken and without dispute it establishes the allegations of appellee's petition, that as work progressed the city inspectors determined that at the points where the breaks occurred 4 to 6 inches of said stabilized shell would suffice. This proved insufficient and it became necessary to do the work over. The breaks were not

due to defects in material or workmanship, but were due to insufficiency in the amount of sand stabilized shell which the city inspector directed should be used. There is also no dispute that the additional work done to correct the breaks was done at the direction of the city inspectors and in the manner as directed.

There is no dispute concerning the correctness of the amount of the claim except as to attorney's fees. In fact, it was stipulated.

The questions to be decided by us are whether the appellant is liable for the cost of any of the work and whether the appellant is liable for attorney's fees under Article 2226.

We have reached the conclusion that the trial court correctly held that appellant was liable for the work done at the direction of the city inspectors in repairing the breaks. We also have reached the conclusion that Article 2226 does not apply to municipalities and the trial court, therefore, erred in allowing recovery of an attorney's fee.

We will now state our reasons for such holdings.

■ The rule in Texas is that if a contractor agrees to construct an improvement according to certain plans and specifications for a fixed or lump sum, he assumes all risks as to the sufficiency of the plans and specifications, and is bound to furnish the finished improvement according to such plans and specifications. In case of destruction or damage to the improvement prior to acceptance by the owner due to defects in plans and specifications or because of any other occurrence, apart from a legal wrong of the owner, the loss must fall on the contractor. The contractor is in as good a position as is the owner to know whether the plans and specifications are sufficient for the purpose and if he agrees to build the improvement according to them at a fixed price, he must do so. Lonergan v. San Antonio Trust Co., 101 Tex. 63, 104 S.

W. 1061; 101 Tex. 63, 106 S.W. 876; City of Dallas v. Shortall, Tex.Com.App., 131 Tex. 368, 114 S.W.2d 536; Bastrop & Austin Bayou Rice Growers Ass'n v. Cochran, Tex.Civ.App., 138 S.W. 1188.

It will be noted that in each of those cases the contract provided that the contractor for a lump or fixed sum would furnish the improvement according to the plans and specifications furnished by the owner, and the court found it was the intention of the parties that the contractor would at all events furnish such improvement.

■ We must examine the contract here to determine what the parties intended. It is so elementary that no citation of authority is necessary to establish that in the interpretation of a contract, the court will seek to ascertain the intention of the parties as reflected by the entire contract. Too, if there are apparently conflicting provisions in different portions of the contract, they shall be harmonized if possible.

■ In the contract before us we find that the appellant desired that a sanitary sewer be constructed along a defined route, it to consist of 2,650 feet of 6-inch pipe, 13,260 feet of 8-inch pipe, 2,050 feet of 10-inch pipe and 1,510 feet of 12-inch pipe. An estimate was made of the excavation required, the fixtures necessary and the materials necessary. This was done by providing in the bid sheets, which became a part of the contract, an approximation of the quantities that would be required. Too, there was the requirement that bids be at unit prices on each item. Further, the contractor's proposal stated that the contractor proposed to construct the sewer for the named unit prices. In the general contract it was stated that the work was to be done for $67,784, but this was but the sum of the unit prices quoted in the bid based on the approximate quantities stated in the bid. Too, the general contract provided that when the work was completed according to the plans and specifications, the city would pay the contractor the unit

prices stated in the bid proposal. Further, it is to be noted Item 3:14 of the Specifications stated that special plans for the construction of sewers in unstable soil would be provided as found necessary during the progress of the work, and that such work should be paid for at the unit prices.

It is to be noted that the plans and specifications are not absolute and fixed as to method of construction, but the above provisions evidence a recognition by the parties that subterranean conditions may be such that materials, particularly stabilizing ones, may be required in varying quantities along the route in order to produce the finished improvement desired.

Appellant urges that paragraphs 4, 8 and 22 of the general contract are inconsistent with the "Special Provision" and "Specifications" Item 3:14 and, therefore, control since the general contract expressly provides that in case of a conflict the provisions of the general contract control. We will notice these paragraphs separately.

Paragraph 4 in effect provides that the contractor has made test holes and has satisfied himself that the site is suitable for the work to be done and assumes responsibility for it. This is provided in the first sentence. The third sentence states the plans and specifications have been read by the contractor and he agrees to their sufficiency for the work to be done. We see no inconsistency between these provisions and the "Special Provision" and Item 3:14 of the Specifications, which provide for the use of stabilized shell material where found necessary during the progress of the work.

Paragraph 4 merely means the site has been examined and determined suitable for the work to be done according to the plans and specifications, and that the plans and specifications are sufficient to produce the desired improvement. However, the "Special Provision" and Item 3:14 contain the variable of what stabilizing devices may be required. Therefore, when the appellee agreed to build the sewer according to the

plans and specifications and agreed to their sufficiency, he was encompassing this variable the same as other provisions of the plans and specifications.

Paragraph 8 and the second sentence of paragraph 4 merely provide that the general contract shall control inconsistent provisions of the specifications.

Paragraph 22 was inserted merely to avoid the possibility of an assertion by the contractor that he was misled by information given by maps, drawings, specifications, etc., furnished by appellant. We have no such claim in this case.

We think an analysis of the provisions shows no conflict but, to the contrary, shows harmony between them.

We deem the above cited cases relied on by appellant inapplicable because of the nature of the contract before us.

Appellant urges further, however, that directions for this so-called "extra work" were not given in writing as required by the contract. The contract does provide that extra work must be ordered in writing. We do not deem the work involved as extra work. It was work provided for in the contract. The contract called for the use of stabilizing devices as needed as determined during the progress of the work.

Extra work is work arising outside of and independent of the contract; something not required in its performance. Additional work is that required in the performance of the contract and without which it could not be carried out. McQuillin, Municipal Corporations, Vol. 13, Sec. 37.165, p. 478; Bradshaw v. Wolfe City, Tex.Civ.App., 3 S.W.2d 527, reversed on other points Employers' Casualty Co. v. Wolfe City, 119 Tex. 552, 25 S.W.2d 320; City of Baton Rouge, La. v. Robinson, 5 Cir., 127 F.2d 693; Great Lakes Dredge & Dock Co. v. City of Chicago, 353 Ill. 614, 188 N.E. 196; Rebekah Assembly, I. O. O. F., v. Pulse, 47 Ind.App. 466, 92 N.E. 1045,

94 N.E. 779; Coryell v. Dubois Borough, 226 Pa. 103, 75 A. 25; Degnon Contracting Co. v. City of New York, 235 N.Y. 481, 139 N.E. 580.

■ Appellant lastly responds to appellee's assertion of liability by setting up that the City Controller had not certified as to the availability of funds to cover this additional compensation, as is required by Article II, Sec. 19a of the city charter. This charter provision reads as follows:

"Sec. 19a. Contracts, ordinances, etc., appropriating money.—No contract, agreement or other obligation involving the expenditure of money in excess of one thousand dollars shall be ordered, authorized, entered into or executed by any officer of the city unless same be by authority of ordinance, nor shall any ordinance, resolution or order for the appropriation of money, or for the making of any contract, agreement or other obligation requiring the expenditure of money, be passed by the council unless the controller first certify to the council that the money required for such contract, agreement, obligation or expenditure is in the treasury and not appropriated for any other purpose, or that the funds will be received into the treasury and be available before the maturity of said obligation, and that the said funds anticipated have not been already appropriated for any other purpose, which certificate shall be filed and immediately recorded. * * *"

There is no contention that the Controller did not certify, in accordance with this provision, as to the contract. The complaint is that the additional expense was incurred without there being such a certifi-cate. As above stated, this was a unit price contract and the Controller certified as to availability of funds for the completion of the contract which encompassed possible increase above $67,784. Exactly what the increase might be was not absolutely determined, but it could well be estimated and the Controller could consider the estimate and make his certificate with the estimate in mind. There is no evidence in the case that the Controller's certificate was not broad enough to cover the additional work estimated which is called for under the terms of the contract. There is no contention that funds were not or are not available.

■ Article 2226, Revised Civil Statutes, authorizing collection of attorney's fees in certain types of cases, provides in part: "Any person having a valid claim against a person or corporation * * * may also recover * * * a reasonable amount as attorney's fees * * *."

It will be noted that the word "corporation" is used. It is not stated that a municipal corporation is included. In the absence of some provision of an act evidencing an intention to include a public corporation the word "corporation" does not include such, but is construed to mean private corporations. City of Dallas v. Halford, Tex.Civ. App., 210 S.W. 725, writ ref.; City of Tyler v. Texas Employers' Ins. Ass'n, Tex. Com.App., 288 S.W. 409; State v. Central Power & Light Co., 139 Tex. 51, 161 S.W. 2d 766.

The trial court erred in allowing attorney's fees.

The judgment of the trial court will be reformed so as to eliminate the recovery of any attorney's fee in the amount of $1,000, and, as reformed will be affirmed.