## Ahrens et al. v. Reading, Appellant.

*Contracts—Municipalities — Construction work—Extra work — Directions of city engineer—Arbitration and certificate clauses— Capricious decision by engineer—Case for jury.*

1. In an action against a municipality to recover for extra work done in connection with the construction of certain filter beds, the contract provided "wherever excavations are carried on beyond the lines and grades furnished by the engineer, the contractor shall, at his own expense, refill such places with concrete or other material selected by the engineer. Wherever materials are encountered which are not suitable for supporting the structures, the excavation shall be carried to such additional depth as may be specified by the engineer. Excavation and concrete necessary for such additional depth will be paid for [by the city] at the prices bid [by the contractor] for excavation and concrete masonry." Plaintiffs produced evidence to show that while the ground was being prepared for construction, defendant's engineer determined that the rock material encountered was not suitable for supporting the structure and directed excavations to be carried to a suitable depth specified by him; that plaintiffs made the additional excavations to the extent claimed. Defendant contended and offered evidence to prove that when the engineer decided that materials encountered were not suitable for support, and ordered additional excavations, these were allowed and paid for; and that the excavation for which claim was made was necessitated by the negligence of plaintiffs' engineer in blasting out rock, and was not caused by encountering unsuitable material. The trial judge sub-

mitted the case to the jury which found a verdict for plaintiffs upon which judgment was entered. *Held,* no error.

2. In such case a provision that "the decision of the engineer shall be final and conclusive in all disputes which may arise between the parties to the agreement" and "the engineer shall in all cases determine the amount or quantity of the several kinds of work which are to be paid for and the compensation to be paid," will not prevent the submission of the case to the jury, as the question of the conduct of the engineer was involved.

3. Where in such case the contract stipulated that if quantities shall be increased from any cause which may enhance the expense of construction, "such increases shall be paid for at the rates herein provided"; and plaintiffs claimed for furnishing additional concrete for the construction of filter bed roofs, and alleged that defendant's engineer compelled them to mix the concrete in a loose, liquid state rather than in a "stiff paste" as required by the contract, and that thereby a greater quantity of concrete became necessary, the case was for the jury; and defendant's rights were sufficiently protected by instructions to the effect that the jury's allowance on this account should be limited to occasions where the necessity for increasing the quantity of concrete arose purely from a change in the consistency thereof ordered by the defendant's engineer; but that no allowance should be made where the use of additional material was traceable to any shortcomings or omissions on the part of the plaintiffs.

Argued March 4, 1918. Appeal, No. 320, Jan. T., 1917, by defendant, from judgment of C. P. Berks Co., March T., 1915, No. 19, on verdict for plaintiffs in case of H. E. Ahrens and W. B. Ahrens, trading as H. E. Ahrens Co. v. City of Reading. Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit on a contract for the construction of filter beds. Before ENDLICH, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiffs for $15,831.02 and judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury and in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v.

*Jefferson Snyder,* with him *Wellington M. Bertolet,* for appellant.

*Isaac Hiester,* with him *John B. Stevens,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, April 3, 1918:

The plaintiffs sued to recover on a written contract with the City of Reading for the construction of filter beds, claiming $23,780.09; they obtained a verdict for $15,831.02, upon which judgment was entered, and defendant has appealed.

About three fourths of the amount sued for represents the contract price of additional work and material furnished by plaintiffs, which entered into the construction of foundations and flooring of the filter beds; and the remaining one-fourth, the stipulated price of additional concrete used by plaintiffs in erecting the roofs of these beds. We shall consider the two items of claim separately and in the order named.

As to the first item, the contract in question provides, inter alia: "Wherever excavations are carried on beyond the lines and grades furnished by the engineer, the contractor shall, at his own expense, refill such places with concrete or other material selected by the engineer. Wherever materials are encountered which are not suitable for supporting the structures, the excavation shall be carried to such additional depth as may be specified by the engineer. Excavation and concrete necessary for such additional depth will be paid for [by the city] at the prices bid [by the contractor] for excavation and concrete masonry."

At the trial, plaintiffs claimed and gave evidence to prove that, during the course of preparing the grounds for construction of the beds, defendant's engineer in many instances determined that rock material "encountered" was not suitable "for supporting the structures," and, for that reason, directed the excavations be carried to additional depths specified by him; that,

in obedience to and in accordance with these directions, they, the plaintiffs, were obliged to make additional excavations to the extent claimed for in this suit. On the other hand, the defendant contended and presented evidence to prove that, whenever its engineer decided that materials encountered were not suitable for support, and ordered additional excavations, these were allowed and paid for; that as a matter of fact the particular additional excavating here in question was necessitated by the negligence of plaintiffs in blasting out rock, and was not in any sense caused by "encountering" unsuitable "material."

Thus clear issues of fact arose, which were tersely and properly submitted to the jury. The defendant contends, however, that no evidence should have been received on these issues, and that they ought not to have been submitted to the jury, because of two clauses contained in the written contract: (1) A provision to the effect that "the decision of the engineer shall be final and conclusive in all disputes and disagreements which may arise between the parties to this agreement"; (2) A stipulation that "the engineer shall in all cases determine the amount or quantity of the several kinds of work which are to be paid for......and the......compensation to be paid," and certify accordingly.

In receiving testimony and charging the jury, the learned trial judge properly acted upon the theory that the engineer, when rendering his decisions, was "bound to......give due effect to the terms of the contract and not......to depart from them or substitute something else in their place"; and, therefore, whenever additional excavations were made because materials were encountered which were not suitable for supporting the structures, and these excavations were carried to depths specified by the engineer, the latter, under the terms of the contract, was obliged to make allowances of extra compensation to plaintiffs, at the prices named in the agreement (citing Drhew & Beel v. Altoona, 121 Pa. 401;

Coryell v. Dubois Boro., 226 Pa. 103). Again, in refus-
ing judgment n. o. v. the court below properly sustained
the theory upon which the case had been tried, and cor-
rectly held that the "disputes" involved were really be-
tween the contractors and the engineer, as to whether or
not the latter had specified the additional depths in ques-
tion and concerning his stated reasons for so doing, if
done; and since there was no denial as to the execution
of the work in question or as to the prices to be paid
therefor, if any, the court below did not err in applying
the principle laid down in Smith v. Cunningham Piano
Co., 239 Pa. 496, 501, and the authorities there cited,
governing cases of this kind.

The syllabus of the Smith case states the rule thus:
"Where......the controversy is mainly as to the con-
duct of the architect himself, there being evidence tend-
ing to show that he was capricious and unreasonable in
refusing to approve of work that had been done in
strict accordance with his directions, the question is for
the jury, and the latter is properly instructed that the
arbitration clause in the......contract referred to ques-
tions arising between the contractor and owner, and not
to questions that concerned the performance of duties by
the architect himself." Here, if as a matter of fact the
excavations claimed for were made on and in accordance
with the order of the city engineer, after his deci-
sion that materials had been encountered which were
"not suitable for supporting the structures" (and the
jury has so found), it follows as a matter of law that
plaintiffs would be entitled to payment; and a refusal
of the engineer so to certify would not be the exercise
of arbitral jurisdiction, but simply a capricious at-
tempt to deprive plaintiffs of their contractual rights.
Hence, notwithstanding the arbitration and certificate
clauses contained in the written agreement, the case was
for the jury, to determine the beforementioned facts re-
garding the conduct of defendant's engineer.

In view of the conclusion just stated, it becomes un-

necessary to consider the other point discussed in the paper books, as to whether or not, since the contract contains a provision that the engineer's payment certificates shall be subject to review and correction by a board representing the defendant city, the arbitration and other clauses above referred to could, under any circumstances, interfere with the right to trial by jury.

On the second branch of the case, concerning plaintiffs' claim for additional concrete entering into the construction of the filter-bed roofs, the written agreement provides, inter alia, that concrete shall be "wetted and mixed to form a stiff paste"; but plaintiffs claim defendant's engineer compelled them to mix it in a loose, liquid state, that the prescribed molds for holding the substance were not adapted to this fluid condition, and, hence, that the use of a greater quantity of concrete became necessary. The contract stipulates, where quantities shall be increased from any cause which may enhance the expense of construction, "such increase shall be paid for at the rates herein provided."

In disposing of the claim in hand, the court below well says that the charge explicitly limits the jury's allowances on this account to occasions where the necessity for increasing the quantity of concrete arose purely from a change in the consistency thereof ordered by the city's engineer, and forbids allowances where the use of additional material was traceable to any shortcomings or omissions on the part of plaintiffs themselves; and President Judge ENDLICH adds: "It is by no means clear, from the size of the verdict rendered, that the jury allowed plaintiffs anything on this item of their demand, but, if they did, the allowance must be presumed to have been made in accordance with these instructions."

As stated by the court below, the verdict strongly indicates that the jury made no allowance to plaintiffs on account of the present item of claim; but, be this as it may, after carefully reading all the testimony, we are not convinced of the inapplicability to this branch of

the case of the principles already stated in our consideration of the subject of the additional excavations, or that harmful error was committed in submitting the issues involved to the jury.

The assignments are overruled and the judgment is affirmed.