## Ferro-Concrete Co. *v.* Northampton County, Appellant.

*Contracts—Building contracts—Construction—Delay in completion—Acquiescence in delay.*

1. Upon a suit by a contractor against a county to recover a balance due on the contract price for the erection and construction of a bridge, in which the demand of the plaintiffs was met by a counter-claim on the part of the county, based on a provision in the contract requiring that the work should be completed within a certain time and stipulating a certain sum per day as liquidated damages for delay, it was admitted that the bridge had not been completed within the stipulated time. It appeared that the contract provided that in case of rock not being found at the estimated elevation, an extension of time was to be allowed in the same ratio to the time limited as the increased yardage of concrete construction bore to the total yardage above the estimated elevation. Rock was not found at the estimated elevation and a greater depth had to be reached. By agreement, for this additional work, piles were substituted for concrete. It was not contended that the construction by piles required any less time than would have been required for concrete. *Held,* that the trial judge correctly in-

structed the jury that the additional time required for pile work was to be added on to the time originally fixed for the completion of the work and that no damages for this delay were chargeable against the plaintiffs.

2. In such case, it further appeared that under the contract plaintiffs were required to submit to a navigation company, whose canal was to be crossed by the proposed bridge, plans of temporary bridges and false work to be used in removing the old bridge structure and building the new one before commencing the work, and to build temporary bridges and false work in all respects according to the requirements and satisfaction of the navigation company. Plaintiffs produced evidence that they had submitted plans to the navigation company which they were prepared to observe, but that these had to be abandoned later on because of the demands made with respect to the width of the clearance. The defendant introduced evidence which would have supported a contrary finding. The trial judge submitted the question as one of fact for the jury on the basis that if the facts were as claimed by the plaintiff, they were entitled under the terms of the contract to an extension of the time limit for the completion of the work in consequence. *Held,* no error.

3. It also appeared that adding to the time originally fixed in the contract the additional time allowed for the two factors previously mentioned, the time for the completion of the bridge was extended to the middle of January, but that the bridge was not completed and turned over until August 14th following. Plaintiffs offered evidence to show that by the middle of January they were in position to substantially complete the bridge, but that on the 30th of December previous, they were served with a copy of a resolution adopted by the board of county commissioners directing and requiring them to suspend the work of concreting until freezing weather had passed, and that in consequence of this order the work on the bridge was suspended and not resumed until some time in April following, and then under conditions and circumstances, for which it was claimed they were not responsible, which prevented a completion before the following August. After the resumption of the work in April, plaintiffs prosecuted the work with reasonable expedition, the county making no complaint whatever and continuing its payments regularly on account as the work progressed, never asserting any claim for liquidated damages on account of delay until after the bridge had been completed and turned over. *Held,* that the trial judge correctly submitted the question to the jury as to whether or not under the circumstances the county had waived its right to liquidate damages.

Argued March 9, 1914.  Appeal, No. 206, Jan. T., 1913, by defendant, from judgment of C. P. Northampton Co., Feb. T., 1913, No. 53, on verdict for plaintiff in case of Ferro-Concrete Co. v. The County of Northampton. Before Fell, C. J., Brown, Potter, Elkin and Mosch-zisker, JJ.  Affirmed.

Assumpsit to recover balance due on a building contract.  Before Stewart, J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $14,836.74 and judgment thereon.  Defendant appealed.

*Errrors assigned* were various instructions of the court and rulings on evidence.

*James W. Fox,* County Solicitor, for appellant.

*Robert A. Stotz,* for appellee.

Opinion by Mr. Justice Stewart, April 13, 1914:

The action was for the recovery of a balance on the contract price for the erection and construction of a concrete bridge, with steel reenforcements, over the Lehigh river at Easton.  Under the contract plaintiffs were to receive for the completed structure $109,950.  This sum, less ten per cent. which under the terms of the contract was to become payable upon an inspection of the bridge by viewers appointed by law, and an approval by the court, has been fully paid to the plaintiffs.  The controversy is over the ten per cent. retained.  The bridge has been fully completed, and accepted by the county, and the demand of plaintiffs is for the payment of the ten per cent. retained.  This demand is met by a counterclaim on the part of the county, based on a provision in the contract which requires that the work as outlined in the plans and specifications be completed within 180 days from the time the contract is awarded, and stipu-

lates that in case of failure to complete the work within
the prescribed time the contractors shall pay to the
county the sum of fifty dollars for each day after the
expiration of the said 180 days that the work remains
unfinished, not as penalty but as liquidated damages.
The contention on part of the county was that plaintiffs
instead of completing the bridge within the time limit,
which expired 23d October, 1911, did not complete it
until August of the following year, and that for this
delay the county was entitled to recover from plaintiffs
the sum of $14,800. That the bridge was not completed
within 180 days from December, 1911, was admitted.
The plaintiffs' reply to the counter-demand was, first,
that the 180-day provision in the contract was not abso-
lute and unconditional, but was dependent on conditions
which failed; that the contract by another section (90)
provided that in case of such failure of conditions,—rock
not being found at the estimated elevation—an extension
of time was to be allowed in the same ratio to the time
limited as the increased yardage bore to the total yard-
age above the estimated elevation. It clearly appeared
that rock was not found at the estimated elevation, and
that in consequence a greater depth had to be reached
than that originally contemplated. At the suggestion
of the plaintiffs, for reasons which met the approval of
the defendant, for this additional work, piles were sub-
stituted for concrete. It is admitted by appellant that
had the concrete work been adopted the contractor
would have been entitled to an extension of forty-seven
days beyond the 180 because of the additional work re-
quired. It is not contended that the construction by
piles required any less time than would have been re-
quired for concrete, but the argument is that this
provision for an extension of time relates exclusively to
concrete work, and that it was eliminated by the supple-
mental agreement substituting piles for concrete. The
learned trial judge rejected this view of the case, as we
think properly, and held that the 180-day limit was de-

pendent on finding rock at the estimated elevation, and that the time of the completion of the bridge was thus automatically extended by the formula prescribed in the contract, and so instructed the jury.

A further claim of extension of thirty-six days was made by plaintiffs for the reason that under the terms of their contract they were required to submit to the Lehigh Coal & Navigation Company, whose canal was to be crossed by the proposed bridge, plans of the two temporary bridges and false work which were to be used in removing the old bridge structure and building the new one before commencing the work, and to build the said temporary bridges and false work in all respects according to the requirements and to the satisfaction of the Lehigh Coal & Navigation Company, with the provision that in case the conditions imposed by the latter company occasioned more expense than it would be reasonable that the plaintiffs should bear, they should be allowed a sum in addition to the contract price as should thereafter be mutually agreed upon. The contention on part of plaintiffs was that they had submitted plans to the Lehigh Coal & Navigation Company, which they were prepared to observe, but that these had to be abandoned later on as the work was progressing because of extraordinary demands made by the navigation company with respect to the width of clearance. The evidence adduced by plaintiffs, if believed, sustained their contention, that because of these demands made by the navigation company, which they were required by their contract to observe, they were delayed thirty-six days in the completion of the work. The evidence adduced by the defendant would have supported a contrary finding. The question was one of fact which does not concern us; the one question for our consideration being whether, conceding the facts to be as claimed by plaintiffs, they were entitled under the terms of their contract to an extension of the time limit in consequence. At the time the contract was entered into, it was not known what the

requirements of the canal company would be, yet whatever they might be, the plaintiffs obligated themselves to meet and fulfill them. A reasonable implication arising, in view of the time fixed for the completion of the work, would be that plaintiffs were to be made acquainted with the company's demands in time to permit them to proceed with the work of construction without interruption or delay. They were to build in accordance with these requirements whatever they might be. A change in the requirements involving the undoing of work already done and consequent delay in the completion of the bridge, except as plaintiffs were chargeable with some default in connection therewith, was a contingency not expressly provided against; nevertheless, to deny for this reason the plaintiffs a corresponding extension of the time limit in consequence would be so inconsistent with fair dealing and the general spirit of the contract, that, in the absence of express words requiring it a reasonable construction would be that for delay so occasioned plaintiffs were not to be chargeable. The question of whether plaintiffs were actually delayed on this account without themselves being in blame, and to what extent, was submitted to the jury with the result that the jury made an allowance of thirty-six days additional extension on this account.

Allowing the several extensions above indicated, the period for the completion of the bridge would be extended to 14th January, 1912. But the bridge was not completed and turned over to the county until 14th August following. To relieve themselves from liability for this further delay, plaintiffs contended and offered evidence to show that on 14th January they were in position to have substantially completed the bridge by the first day of February following; that on the 30th of December previous they were served with a copy of a resolution adopted by the county commissioners directing and requiring them to suspend the work of concreting until freezing weather had passed, and to forbid

the transit company from crossing the bridge and the use of the arches until certain things had been done; that in consequence of this order the work on the bridge was suspended and not resumed until sometime in April following, and then under conditions and circumstances for which it is claimed they were not responsible, and which need not here be recited, which prevented a completion before the following August. Plaintiffs insist that this interference with and interruption of the work by the county constituted a waiver of the county's claim for liquidated damages for all subsequent delay. The competency of the evidence offered by plaintiffs in this connection is not open to question. Assuming its sufficiency, how stands the case? But for the order of the county commissioners suspending work the bridge would have been completed by 1st of February, 1912, which meant a delay of fifteen days after the time limit as enlarged by considerations before mentioned had expired, and for which delay the plaintiffs have been charged as directed by the court; the order was to suspend until freezing weather had passed; the suspension continued until in April following, presumably because the weather conditions, which in the judgment of the commissioners required a suspension, continued until that time, there being no evidence to the contrary and nothing to show any dissent on the part of the county; other conditions existing at the time work was resumed, and for which plaintiffs were not responsible, were unfavorable to a rapid completion of the work; plaintiffs thereafter prosecuted the work with reasonable expedition, the county making no complaint whatever, and continuing its payments regularly on account as the work progressed, never asserting any claim for liquidated damages on account of delay until after the bridge had been completed and turned over. We have thus briefly summarized the findings of the jury, for it was upon these very questions of fact that the case was submitted. The verdict is an unqualified affirmance, and is a distinct finding from all

the evidence in the case that the county had waived its right to liquidated damages under the circumstances indicated. This conclusion was reached after the jury had been fully instructed in a very able and impartial charge in which the law of the case was most intelligently and correctly expressed, and the evidence most carefully reviewed, and we see no reason why the verdict so rendered should not be the end of controversy. In Coryell v. Dubois Borough, 226 Pa. 103, where a like question was raised, we said: "The evidence we think clearly shows such acquiescence on the part of the borough in the delay that the enforcement of its present claim would be unjust and inequitable. We have been compelled to search through the evidence for the facts. If it anywhere appears that dissatisfaction with the delay was expressed by the borough authorities for months after the extension expired, such evidence has escaped us. It was not until September, 1903, within two months of the completion of the work, that any formal notice was served on the plaintiff. Nothing whatever had been said or done until then indicating a purpose on the part of the borough to claim anything for delay; but on the contrary by its course of action it gave the plaintiff abundant ground for believing that the provisions of the contract would not be enforced against it." The same considerations, even in a more marked degree, are present here in this case, and very properly they were allowed to work a like result.

The assignments of error are overruled and the judgment is affirmed.