IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Electri-Tech, Inc.                          :
                                            :
            v.                              :    No. 341 C.D. 2024
                                            :    Argued: April 8, 2025
Radnor Township,                            :
            Appellant                       :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                     FILED:  June 17, 2025

            Radnor Township (Township) appeals an order of the Lancaster County
Court of Common Pleas (trial court), granting judgment in favor of Electri-Tech,
Inc. (Contractor) and against the Township, in the amount of $27,849.50, plus
prejudgment interest in the amount of $8,738.64.[1]  The trial court found that
Contractor had satisfactorily completed the electrical work on a project for the
Township and, thus, was owed final payment.  On appeal, the Township argues that
the trial court erred.  First, it contends that Contractor did not satisfy the conditions
precedent to final payment because Contractor did not provide proof of insurance on
its work and did not obtain the project architect's approval of its final payment
application.  Second, it contends that because Contractor did not complete the work
within the time specified in the contract, the Township is entitled to liquidated
damages, which were improperly denied by the trial court.  Upon review, we affirm.

---

[1] The order further indicated that post-judgment interest at the rate of six percent shall accrue on
the judgment from the date of entry of the court's order forward.

## Background

To renovate the Radnor Memorial Library (Library Project), the Township entered into separate contracts for the general contractor; plumbing and heating/ventilation; and electrical work.[2] The Township chose Contractor as the prime electrical contractor, at a contract price of $400,000. Change orders added $80,687.76 to the contract price. Contractor invoiced the Township for $480,687.76, and the Township remitted payments of $452,838.26. On October 30, 2018, Contractor invoiced the Township for the retainage of $27,849.50, but the Township did not make the final payment.

On August 17, 2019, Contractor filed a complaint against the Township raising four causes of action: Count I – breach of contract; Count II – damages under the Prompt Pay Act;[3] Count III – in the alternative, promissory estoppel; and Count IV – in the alternative, unjust enrichment/quantum meruit. The Township filed a counterclaim for liquidated damages because Contractor did not complete the work within the time specified in the contract.

---

[2] Section 1 of the Separations Act, Act of May 1, 1913, P.L. 155, *as amended*, 53 P.S. §1003, requires that all contracts for the erection, construction, and alteration of any public building, when the cost of such work exceeds $4,000, must be awarded in the form of separate contracts for the: (1) general construction; (2) plumbing; (3) heating and ventilating; and (4) electrical work.

The Township selected Dolan Construction, Inc. as the prime general contractor (General Contractor) and Myco Mechanical, Inc. as the prime contractor for heating/ventilating and plumbing.

[3] *See* Chapter 39 of the Commonwealth Procurement Code, 62 Pa. C.S. §§3931-3939, commonly referred to as the Prompt Pay Act. The Prompt Pay Act requires government agencies to promptly pay a contractor for the work and materials that they provide on a construction project. 62 Pa. C.S. §3931(a). Its purpose is to "'level the playing field' between government agencies and contractors." *East Coast Paving & Sealcoating, Inc. v. North Allegheny School District*, 111 A.3d 220, 230 (Pa. Cmwlth. 2015) (quotation omitted). The Prompt Pay Act sets a schedule for payment even where the contract does not so provide, 62 Pa. C.S. §3932(b), and allows the government agency to withhold payment when certain notice criteria are satisfied. 62 Pa. C.S. §3934(b).

The parties entered into a number of stipulations. In addition, the trial court conducted a two-day bench trial.

Robert Kennedy (Kennedy), Contractor's project manager for the Library Project, testified. He explained that he attended all meetings and handled any issues that arose during construction on the "top to bottom renovation" of the Library building. Notes of Testimony, 11/6-7/2023, at 15 (N.T. __); Reproduced Record at 378a (R.R. __). Kennedy testified that Contractor substantially completed its work on May 11, 2018.

Kennedy explained that the Library Project encountered a number of delays. For example, Contractor did "not get a notice to proceed" from the Township until January 13, 2017, "even though the contract date was supposed to start in December." N.T. 22; R.R. 385a. Thereafter, from January 24, 2017, until April 3, 2017, Contractor could not work in the building because of ongoing mold remediation.[4] Other delays were occasioned by the Township's requests for additional work.

Kennedy testified about these requests. On or about February 9, 2017, while excavating the parking lot, the General Contractor damaged the existing underground electrical conduits for the parking lot lights. The architect, Kimmel Bogrette Architecture + Site, Inc. (Architect), requested Contractor to install new conduit, and the change order was approved on May 2, 2017. In October of 2017, the Township decided to replace the lighting in the parking lot, for which a change order was approved. Because the conduit in the Library's basement floor had corroded, Contractor had to install a new conduit. In September of 2017, the ceiling

_____

[4] The discovery of black mold in the lower level of the Library required several weeks of remediation and delayed the work of Contractor, which had "no other place to work yet in the building." N.T. 45; R.R. 408a.

lights intended for a room in the Library were found not to fit the ceiling grid. Kennedy explained that these lights required a clearance of six inches from the ceiling to allow for heat distribution. On January 30, 2018, the Architect advised Contractor that it needed time to evaluate whether to adjust the ceiling height to accommodate the lights. Kennedy stated that the Township responses to the change orders did not "take place in a timely manner," which further delayed the project. N.T. 22; R.R. 385a.

Kennedy testified that during construction, the Township never raised any issues regarding Contractor's workmanship. He stated that Contractor has completed all the electrical work on the Library Project.

Kennedy explained that the contract stated a completion date of October 20, 2017, which was extended to December 20, 2017.[5] Because of delays, Contractor completed the work on June 15, 2018. In connection with its final payment, Contractor provided the Township with the closeout documents, which provide information on the light fixtures, power boards, and other equipment installed, as well as warranties. Kennedy testified that "closeout documents [are] a routine part of [any] construction project" and are provided before final payment.[6]

_____

[5] Change Order No. 1 extended the final completion date to December 20, 2017. R.R. 132a.

[6] Kennedy explained that, on October 18, 2018, he emailed the Architect that he "had all the closeout documents ready except the warranty statement" because he wanted to confirm that the final inspection date, June 15, 2018, would be used for warranty purposes. N.T. 131; R.R. 494a. Not receiving any response, Kennedy sent a follow-up email stating that he was going to send the closeout documents and warranty statement. Subsequently, Kennedy received an email from Rick Capone (Capone), who served as the clerk of works on the Library Project, requesting that Kennedy "hold off a couple of days on [sending] the [closeout] documents[.]" N.T. 132; R.R. 495a. Kennedy testified that he and Capone discussed what date to use for the warranty statement, and he wrote up the warranty statement for July 12, 2018, the date the Township received the certificate of occupancy. N.T. 136; R.R. 499a.

Additionally, Kennedy testified that he provided Capone with a transmittal list, listing all closeout documents that Contractor was providing to the Township. On November 5, 2018, he

4

N.T. 13; R.R. 376a. Contractor submitted a final bill of $27,849.50 to the Township, but it has refused to pay.

On cross-examination, Kennedy acknowledged that Contractor did not submit a change order request "to move the [final] completion date" beyond December 20, 2017. N.T. 171-72; R.R. 534a-35a. Kennedy further agreed that Contractor's change orders did not seek reimbursement for the additional costs Contractor incurred as a result of the delays.

Kennedy testified about Contractor's obligation to provide insurance for two years after completion of the work. Kennedy explained that Contractor issued an insurance certificate effective June 1, 2018, to June 1, 2019, which was included in the closeout documents. Further, had the Township requested an insurance certificate for 2019-2020, Contractor could have provided it.

Bruce Betz, a consultant with Envision Consultants Limited, testified on behalf of Contractor. To analyze Contractor's damages for the additional costs it incurred because of construction delays, Betz reviewed the contract, the supplemental general conditions, change orders, the extended general conditions change order, as well as the scheduling information. His review did not identify any delays that could be attributed to Contractor. He concluded that Contractor incurred additional costs of $151,447.52 due to the delays in the completion of the Library Project, for which Contractor was entitled to damages.

Finally, Christopher Martucci, Contractor's president, testified. He stated that the Township did not notify Contractor of any defects in its work or claim that Contractor was responsible for any delays in construction. At no point did the Township advise that it had a claim for liquidated damages from Contractor, and it

received an email from Capone stating, "it appears that the items comply." N.T. 134; R.R. 497a. Kennedy understood that he should go ahead and send the closeout documents, which he did. *Id*.

did not contact Contractor within 15 days of receipt of its final payment invoice to explain its refusal to pay. Martucci testified that only in the course of litigation did he learn of the Township's reasons for not making the final payment. Lastly, Martucci testified that the Township has not made any claims that would trigger Contractor's liability insurance policy.

The Township presented no witnesses either in defense of Contractor's claims or in support of its counterclaim for liquidated damages.

**Trial Court Decision**

Following the bench trial and the parties' post-trial submissions, the trial court issued a ruling with 80 findings of fact and 33 conclusions of law. The trial court found that Contractor completed the work on the Project; the Township accepted Contractor's work as satisfactory; the Township remitted payment of $452,838.26 to Contractor; and the Township has not remitted payment on Contractor's final invoice in the amount of $27,849.50. Trial Court Op. at 2-3, Findings of Fact Nos. 11, 16. More specifically, the trial court found that "the Township did not respond within 15 days of the final payment application with any basis for refusing to pay." *Id*. at 3, Findings of Fact No. 18. Although the Township argued that certain closeout documents were not submitted, the trial court found that the evidence "demonstrates, however, that closeout documents were in fact submitted by [Contractor], without any complaint from the Township." *Id*. at 3, Findings of Fact No. 20.

As to the Library Project's schedule, the trial court found that the commencement date was December 19, 2016, but the Township did not issue a Notice to Proceed until January 13, 2017. The contract specified a substantial completion date of October 6, 2017, and final completion by October 20, 2017. The

6

substantial completion date was later revised to November 21, 2017, and the final completion date to December 20, 2017. The contract also provided a procedure by which Contractor could "make claims for additional time." Trial Court Op. at 6, Findings of Fact No. 36. However, there was no evidence that Contractor requested a new completion deadline or objected to the delays occasioned by the Township or General Contractor, which delays directly impacted Contractor's costs and ability to do the electrical work.

As to the Township's claim for liquidated damages, the trial court found that the Township did not assert this claim against Contractor at any point during construction and did not notify Contractor that it was the cause of any delays. Trial Court Op. at 11-12, Findings of Fact Nos. 73-74. None of the Township's monthly payments to Contractor stated a deduction for liquidated damages. Referring to the minutes of project meetings, the trial court noted that there was discussion to the effect that liquidated damages could be imposed for delays, but they were not being imposed. Critically, the trial court found as follows:

> 80. The Township never objected to a schedule update and never asserted in response to a schedule update that [Contractor] would be charged liquidated damages. Instead, the Township allowed [Contractor] to continue with its pace of work, per revised schedules, without any complaint or objection from the Township. []

Trial Court Op. at 13, Findings of Fact No. 80.

The trial court explained that claims for liquidated damages must be raised when the construction delay occurs. In support, the trial court cited *Coryell v. Dubois Borough*, 75 A. 25 (Pa. 1909), where the Pennsylvania Supreme Court denied liquidated damages because the owner did not timely notify the contractor that it would not allow any delays in construction. Here, the Township allowed

7

Contractor to do its work under a delayed schedule and without complaint. By contrast, the Township notified the General Contractor of its intention to assess liquidated damages and did so. *See* Supplemental Reproduced Record at 1014a (S.R.R. __).[7]

The trial court rejected the Township's stated reasons for not making final payment. First, it was the Township's obligation to obtain the necessary approvals from the Architect, and there was no evidence that the Architect had disapproved the final payment application. Second, the closeout documents were fully adequate. The alleged deficiency in the insurance certificate in the closeout documents was not raised until trial. The issue was moot because more than two years had passed without a claim about Contractor's work.

The trial court concluded that Contractor was entitled to payment of the full contract balance of $27,849.50. As an agency subject to the Prompt Pay Act, the Township may refuse payment only if it notifies Contractor of its basis for refusing payment within 15 days of the invoice. 62 Pa. C.S. §3934. The Township did not provide this notice. Accordingly, the trial court granted judgment in favor of Contractor for breach of contract, awarding damages in the amount of $27,849.50; prejudgment interest in the amount of $8,738.64; and post-judgment interest at the rate of six percent from the date of entry of the trial court's order forward.[8]

---

[7] Pennsylvania Rule of Appellate Procedure 2173 requires that the supplemental reproduced record be numbered in Arabic figures, *i.e.*, 1, 2, 3, etc., followed by a small "b." Pa.R.A.P. 2173. The reproduced record does not comply with Rule 2173 because it begins at 1014 and is followed by a small "a." For convenience, we cite to each page as paginated by Contractor.

[8] On February 28, 2024, the trial court denied the Township's Motion for Post-Trial Relief. The trial court, however, granted Contractor's Motion for Post-Trial Relief, molding and modifying the judgment as follows:

> Judgment award is entered in favor of [Contractor] and against [the Township] in the principal amount of $27,849.50, plus prejudgment interest in the amount of $8,738.64, for a total Judgment award of $36,588.14. Post[-]judgment interest at

8

The trial court denied Contractor's claim for delay damages for the stated reason that it did not timely notify the Township of its additional costs. The trial court denied Contractor's claim for damages under the Prompt Pay Act because Contractor did not prove that the Township's violations of the statute were done in bad faith.

The Township filed a post-trial motion that was denied. It then appealed the trial court's judgment.

### Issues on Appeal

On appeal,[9] the Township assigns multiple errors to the trial court:

(1)     Where the public contract between [the] Township and [Contractor] expressly conditioned [Contractor's] entitlement to receive "final payment" on its satisfaction of all "close[]out" obligations, which included, *inter alia*, furnishing contractually required "general liability insurances" with specific coverage for *two years* of post-construction coverage, *and* final payment was further conditioned on the [] Architect's certification of [Contractor's] entitlement to "final payment," where [Contractor] *admitted* that it had failed to furnish the contractually required insurance and where it was undisputed that the [] Architect did not certify final payment was owed and [Contractor] *admitted* at trial that it <u>was not</u> entitled to final payment, did the [t]rial [c]ourt err when it failed to enforce the

_____

the simple rate of 6 percent shall accrue on the Judgment from the date of entry forward.

Trial Court Order, 2/28/2024, at 1 (emphasis in original).

[9] When reviewing a non-jury verdict, our standard of review determines whether the trial court's findings of fact are supported by competent evidence and whether the trial court committed an error in the application of law. *Carulli v. North Versailles Township Sanitary Authority*, 216 A.3d 564, 572 n.4 (Pa. Cmwlth. 2019) (quotation omitted). In addition, we must give the same weight and effect on appeal to the trial court's findings as the verdict of a jury. *Cogan House Township v. Lenhart*, 197 A.3d 1264, 1267 n.3 (Pa. Cmwlth. 2018). Finally, we must view the evidence in the light most favorable to the party that prevailed. *Id.*

A challenge to the sufficiency of the evidence is a question of law requiring a plenary scope of review. *Swift v. Department of Transportation*, 937 A.2d 1162, 1167 n.5 (Pa. Cmwlth. 2007).

express terms of the written contract between [the Township] and [Contractor] and awarded "final payment" to [Contractor] because the Township ostensibly did not "tell" [Contractor] these omissions?

(2) Did the [t]rial [c]ourt err in concluding that [the Township] was legally required to provide [Contractor] "notice" that it was "withholding payment" for "deficiency items" related to [Contractor's] admitted omissions related to [Contractor's] failure to satisfy its "close[]out" obligations based on the "Prompt Pay[] Act," where a "deficiency item" is defined in the Prompt Pay[] Act" as related to "*work performed*," whereas [Contractor's] "deficiencies" *were not* related to "*work performed*," but rather, [Contractor's] application for "[f]inal [p]ayment" improperly request payment for work *not performed*?

(3) Did the [t]rial [c]ourt err when it failed to enforce the express terms of the written contract between [the Township] and [Contractor], when it concluded that [the Township's] counterclaim for liquidated damages was "waived," despite the unambiguous language of §13.4.2 of the Contract General Conditions that expressly provided that there would be *no waivers* of [c]ontract rights *by either party* and despite [Contractor's] express writing to [the Township] confirming that none of the Township's (or [Contractor's]) rights were "waived" and where [Contractor] did not offer the requisite evidence necessary to prove waiver?

(4) Did the [t]rial [c]ourt err by not awarding [the Township] its claimed liquidated damages in the amount of $107,250.00, where [Contractor] *stipulated* with [the Township] that the contractual date for substantial completion was extended from October 6, 2017, to November 21, 2017[,] and [Contractor] stipulated that it did not achieve substantial completion until May 11, 2018, where the [c]ontract [s]pecifications at §00-5240 provides for liquidated damages at the rate of $750/day for each day that [Contractor] *did not* achieve substantial completion *after* the extended substantial completion date (143 days x $750/day = $107,250.00)?

10

Township Brief at 6-7 (emphasis in original).  In the argument section of its brief, the Township summarizes its appeal as raising two main issues:  whether Contractor was entitled to final payment under the contract, and whether the Township is entitled to liquidated damages.

**Relevant Contract Provisions**

Three documents constitute the contract between Contractor and the Township for the Library Project: (1) AIA Document A101-2007, Standard Form of Agreement Between Owner and Contractor (AIA Standard Agreement);[10] (2) AIA Document A201-2007, General Conditions of the Contract for Construction (AIA General Conditions);[11] and (3) Section 00-5220 – A201 Supplemental Conditions (Supplemental Conditions).[12]

Article 5 of the AIA Standard Agreement addresses payments and states, in relevant part, as follows:

> §5.2.1 Final payment, constituting the entire unpaid balance of the [c]ontract [s]um, shall be made by the [Township] to the Contractor when
>
>> .1    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct [w]ork as provided in Section 12.2.2 of AIA [General Conditions], and to satisfy other requirements, if any, which extend beyond final payment; and
>>
>> .2    a final Certificate for payment has been issued by the [Township].

AIA Standard Agreement, Section 5.2.1; R.R. 57a.  Article 5 provides a deadline for final payment as follows:

---

[10] *See* R.R. 53a-60a.

[11] *See* R.R. 62a-101a.

[12] *See* R.R. 103a-27a.  The Supplemental Conditions appear to have been agreed to prior to the start of the Library Project.

§5.2.2 The [Township's] final payment to the Contractor shall be made no later than 60 days after the issuance of the [Township's] final Certificate for Payment, or as follows:

Final payments shall be made within thirty (30) days after completion and acceptance by the [Township] of all [w]ork included in the Contract. The date of substantial completion will be determined by certification.

*Id.*, Section 5.2.2; R.R. 57a.

Section 3.3 of the AIA Standard Agreement provides that damages to the Township caused by Contractor's delay in completion of construction will be calculated as follows:

. . . .

As actual damages for any delay in completion of the work which the Contractor is required to perform under this contract are impossible of determination, the Contractor and his Sureties shall be liable for and shall pay to [the Township], the sum of Seven Hundred Fifty Dollars ($750) as fixed, agreed and liquidated damages for each calendar day of delay from the above stipulated for completion, or as modified in accordance with Section A201, General Conditions thereof, until such work is satisfactorily completed and accepted.

AIA Standard Agreement, Section 3.3; R.R. 55a.

A court's review of a contract is guided by certain principles of contract interpretation, which principles include:

First, "the entire contract should be read as a whole . . . to give effect to its true purpose." *Pritchard v. Wick*, [] 178 A.2d 725, 727 ([Pa. ]1962). Second, a contract must be interpreted to give effect to all of its provisions. *Murphy*[ *v. Duquesne University of the Holy Ghost*], 777 A.2d [418,] 429 [(Pa. 2001)]. Thus, our Court "will not interpret one provision of a contract in a manner which results in another portion being annulled." *LJL Transp*[*ortation*] *v. Pilot Air Freight*,[] 962 A.2d 639, 648 ([Pa. ]2009). Third, "a word used by the parties in one sense is to be interpreted as employed in the same sense throughout the writing

12

in the absence of countervailing reasons," such as thwarting the intent of the agreement. *Maloney v. Glosser*, [] 235 A.2d 607, 609 ([Pa. ]1967). And, finally, a party's performance under the terms of a contract is evidence of the meaning of those terms. *Atlantic Richfield v. Razumic*, [] 390 A.2d 736, 741 ([Pa. ]1978).

*Commonwealth ex rel. Kane v. UPMC*, 129 A.3d 441, 464 (Pa. 2015) (*UPMC*).

In addition, statutory law governs construction contracts between a government agency and a contractor. *See* 62 Pa. C.S. §3901(a) (Prompt Pay Act "applies to contracts entered into by a government agency through competitive sealed bidding or competitive sealed proposals"); 62 Pa. C.S. §3901(b) (Prompt Pay Act establishes "a uniform and mandatory system governing public contracts to the extent of the requirements set forth in this chapter and shall be construed to effectuate such purpose").

The Prompt Pay Act requires that the government agency "pay the contractor . . . strictly in accordance with the contract." 62 Pa. C.S. §3932(a). As to withholding payment, the Prompt Pay Act states, in pertinent part, as follows:

> **(a) When government agency may withhold payment.**--The government agency may withhold payment for deficiency items according to terms of the contract. The government agency shall pay the contractor according to the provisions of this subchapter for all other items which appear on the application for payment and have been satisfactorily completed. . . .

> **(b) Notification when payment withheld for deficiency item.**-- If a government agency withholds payment from a contractor for a deficiency item, it shall notify the contractor of the deficiency item within the time period specified in the contract or 15 calendar days of the date that the application for payment is received. . . .

62 Pa. C.S. §3934. If the government agency does not pay the contractor as required, the contractor may seek to recover damages and attorneys' fees under the Prompt Pay Act. It states, in relevant part, as follows:

13

**(a) Penalty.**--If arbitration or a claim with the Board of Claims or a court of competent jurisdiction is commenced to recover payment due under this subchapter and it is determined that the government agency, contractor or subcontractor has failed to comply with the payment terms of this subchapter, the arbitrator, the Board of Claims or the court may award, in addition to all other damages due, a penalty equal to 1% per month of the amount that was withheld in bad faith. *An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious*. An amount shall not be deemed to have been withheld in bad faith to the extent it was withheld pursuant to section 3934 (relating to withholding of payment for good faith claims).

**(b) Attorney fees.**--Notwithstanding any agreement to the contrary, *the prevailing party* in any proceeding to recover any payment under this subchapter *may be awarded a reasonable* attorney fee in an amount to be determined by the Board of Claims, court or arbitrator, together with expenses, if it is *determined that the government agency, contractor or subcontractor acted in bad faith*. An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious.

62 Pa. C.S. §3935 (emphasis added).

## Analysis

### I. Township's Contractual Obligation on Final Payment

The Township argues that the trial court erred in ordering it to make final payment to Contractor. First, Contractor did not submit proof of liability insurance coverage to cover its project for two years after completion, and Contractor did not obtain the Project Architect's certification of work completion. Second, after submitting its application for final payment, Contractor acknowledged in a November 2018 email that the closeout documents "were to be forthcoming" to the Township. Township Brief at 34. The Township had no obligation to "complain" or "object" to these omissions by Contractor. To the contrary, it was "Contractor's

14

responsibility to prepare and complete [its] own comprehensive lists (punch-lists) in order to submit for [s]ubstantial [c]ompletion." Township Brief at 34 (quoting Supplemental Conditions, Section 9.8.6).

Contractor responds that it did everything necessary for final payment. At trial, it produced a 586-page binder of the necessary closeout documents. The Township mischaracterizes the November 2018 email, which merely referred to a supplement it was providing the Township. Contractor observes that the Township accepted the closeout documents without complaint. Under the Prompt Pay Act, had the closeout documents been insufficient, the Township had 15 days to notify Contractor of the deficiency and provide Contractor with an opportunity to cure the supposed defect. *See* 62 Pa. C.S. §3904. The Township did not do so. Further, the administrative task of obtaining the Architect's signature was the Township's responsibility and cannot justify the Township's refusal to make payment. Even so, under the Prompt Pay Act, the Township was required to give notice to Contractor, and it did not do so.

Section 9.10 of the AIA General Conditions addresses the process for Contractor's final payment and states as follows:

> §9.10.1. *Upon receipt of the Contractor's written notice that the [w]ork is ready for final inspection and acceptance and upon receipt of a final [a]pplication for [p]ayment, the Architect will promptly make such inspection and, when the Architect finds the [w]ork acceptable under the Contract Documents and the Contract fully performed, the Architect will promptly issue a final [c]ertificate for [p]ayment* stating that to the best of the Architect's knowledge, information and belief, and on the basis of the Architect's on-site visits and inspections, the [w]ork has been completed in accordance with the terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in the final [c]ertificate is due and payable. The Architect's final [c]ertificate for [p]ayment will

15

constitute further representation that conditions listed in Section 9.10.2 as a precedent to the Contractor's being entitled to final payment have been fulfilled.

§9.10.2  Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the [w]ork for which the [Township] or the [Township's] property might be responsible or encumbered (less amounts withheld by [the Township]) have been paid or otherwise satisfied, (2) *a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the* [*Township*], (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment and (5), if required by the [Township], other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the [Township].

AIA General Conditions, Section 9.10.1-9.10.2; R.R. 88a-89a (emphasis added). The trial court found that "all final close[]out documents" required under Section 9.10.2 of the AIA General Conditions were completed and submitted to the Township, and the Township "received the closeout documents without complaint or objection." Trial Court Op. at 3-4, Findings of Fact Nos. 20, 22. This included the insurance certificate. *See* S.R.R. 1034a-36a.

The Township contends, however, that the contract required Contractor to provide insurance certificates showing that the required coverages extended "for a period of two years after final payment for the [c]ontract." Supplemental

16

Conditions, Section 11.3.2; R.R. 121a. The requirement assumed a liability insurance policy "issued on a 'claims made' basis[.]" *Id.*

A "claims made" policy protects the insured with respect to claims made against it during the policy period, regardless of when liability arose. *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Company*, 908 A.2d 888, 892 n.1 (Pa. 2006). An "occurrence" policy protects the policyholder from liability for any act done while the policy is in effect without regard to when a claim is presented. *Id.* In short, a "claims made" policy covers claims submitted during the policy period, and an "occurrence" policy covers all acts that occur during the policy period.

Contractor's liability insurance policy was an occurrence-based policy. Kennedy testified as follows:

> [Contractor's Counsel:]   Does [Contractor] have a claims-basis policy?
>
> [Kennedy:]  We do not.
>
> [Contractor's Counsel:]   In fact, what is [Contractor's] policy?
>
> [Kennedy:]  It's occurrence.

N.T. 298; R.R. 661a. This testimony was confirmed by the documentary evidence, which included a copy of Contractor's general liability insurance policy, which was issued on an "occurrence" basis. S.R.R. 1034a-36a. In short, the certificate of liability insurance provided to the Township covered the work done by Contractor for at least two years after completion of the work.

As to the Architect's final certificate of payment, Contractor did what it was required to do. It submitted a final payment application that the work was ready for final inspection and acceptance. Under Section 9.10.1 of the AIA General Conditions, the Architect was required to "promptly make such inspection" and if

17

the work was acceptable and fully performed must "promptly issue a final [c]ertificate for [p]ayment." AIA General Conditions, Section 9.10.1; R.R. 89a.

Contractor submitted the final payment application on October 30, 2018. There was no evidence that the Architect rejected the final payment application or that there were any issues with Contractor's work. Trial Court Op. at 3, 15, Findings of Fact No. 16, Conclusions of Law No. 10. Thus, there was no basis for the Architect not to issue "promptly" a certificate of final payment.

Nevertheless, the Township contends that it sent an email to Contractor notifying it of deficiencies, which warranted withholding final payment. This argument is belied by the record.

In October of 2018, Kennedy emailed the Architect to inquire about the date to use for purposes of issuing Contractor's warranty. Having received no response, on October 30, 2018, Kennedy advised the Architect that Contractor would use June 15, 2018, the date on which final inspection was completed, so that it could proceed with the closeout documents. The Township's inspector, Capone, requested Contractor "hold off a couple [of] days" because he was in the "process of completing a review of the Contract Documents specific to Close[out], Warranty, final costs, etc." S.R.R. 1032a. On November 1, 2018, Kennedy advised Capone that Contractor was ready to send out the closeout package, and one week later, Capone responded as follows:

> We are willing to use the June 15 date as the date for substantial completion if you agree that [Contractor] was done all of its work before June 15 and are not and will not make any claims about extended costs after the date it finished its work (which was before June 15). We also are requesting your promise that [Contractor] will complete any unfinished punch list work and provide the as-built drawings and other paperwork. . . .

18

S.R.R. 1031a.  Subsequently, on November 13, 2018, Kennedy emailed Capone about the warranty statement date, stating that

> [t]his issue has delayed our sending of the close[]out document package with the exception of the As Built Drawings of which [Architect] has specifically requested they be sent separately.
>
> *Regardless, we will prepare our warranty statement for July 12, 2018, and send the closeout document package accordingly.*

S.R.R. 1030a (emphasis added).

In short, this email exchange did not notify Contractor of any contract deficiencies.  On the contrary, it shows that Contractor was ready to provide the closeout documents, including the warranty statement, but held off sending them at the Township's request.

The purpose of a deficiency notice is to allow correction of those deficiencies.  Capone's November 8, 2018, email stated that Contractor should "complete any unfinished punch list work and provide the as-built drawings and other paperwork[,]" S.R.R. 1031a.  Contractor responded on November 13, 2018, that it sent the closeout documents to the Township.  In short, this exchange shows that Contractor completed the punch list.  Simply, the Township offered no evidence that it ever notified Contractor of a deficiency in its performance.[13]

Under the Prompt Pay Act, "[p]erformance by a contractor in accordance with the provisions of a contract shall entitle the contractor to payment by the government agency."  62 Pa. C.S. §3931(a).  A government agency may withhold payment from the contractor only when the agency identifies "deficiency

---

[13] Kennedy testified that, on November 1, 2018, he sent an email to Capone advising that Contractor had sent "a copy of the transmittal[,]" which is a document that "lists every document" which Contractor would be sending in the closeout package.  N.T. 134; R.R. 497a.  On November 5, 2018, he received a response from Capone stating, "that the items comply," which he understood meant "go ahead and send [the closeout documents] in."  *Id*.

19

items" in the contractor's performance, which must be in conformity with the terms of the contract between the parties. 62 Pa. C.S. §3934(a). Here, consistent with the record, the trial court found that the Township did not provide notice to Contractor of any "deficiency items" in Contractor's performance. Accordingly, under the Prompt Pay Act and the contract, the Township lacked any authority to withhold final payment to Contractor.

The record evidence supports the trial court's findings that Contractor provided all the required closeout documents, including the requisite insurance certificate. Consistent with the contract documents and the Prompt Pay Act, the trial court properly held that the Township had no basis for withholding final payment. We reject the Township's argument that the notice requirements in the Prompt Pay Act did not apply because they were extra contractual. The statutory provisions operate as a supplement to the contract provisions.

We discern no error in the trial court's holding that the Township was liable for breach of contract or its judgment against the Township for damages in the amount of $27,849.50, plus interest.

## II. Liquidated Damages for Delay

In its second issue, the Township argues that the trial court erred in denying its counterclaim for liquidated damages in light of the evidence that Contractor did not substantially complete the work by the contractual date of November 21, 2017. Further, the trial court failed to consider Section 13.4.2 of the General Conditions that expressly provided that neither party waived any of its contract rights, which included the Township's right to liquidated damages.

Contractor responds that the Township waived its claim for liquidated damages because it did not notify Contractor that the delay would not be accepted.

20

In support of its argument, Contractor cites the Supreme Court's decision in *Coryell*, 75 A. 25, and its subsequent decisions in *Pressey v. McCornack*, 84 A. 427 (Pa. 1912), and *Ferro-Concrete Company v. Northampton County*, 91 A. 506 (Pa. 1914).[14]

Liquidated damages compensate a party to a contract where the other party has failed to perform its contractual obligation. Liquidated damages represent a good faith estimate in advance of the actual damages that can be recovered in a breach of contract action. *Pantuso Motors, Inc. v. Corestates Bank, N.A.*, 798 A.2d 1277, 1282 (Pa. 2002) (quotation omitted). This Court has explained:

> *Liquidated damages as set forth within a contract compensate a party for difficult-to-prove losses, and "serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable, as is the case in many government contracts."* Priebe & Sons v. United States, 332 U.S. 407, 411 [] (1947) (overruled by *United States v. Detroit*, 355 U.S. 466 [] (1958)). Clauses setting forth liquidated damages are enforced where they are reasonable, and fair attempts to fix just compensation for anticipated loss caused by breach of contracts. *Id*.

*Calabro v. Department of Aging*, 689 A.2d 347, 350-51 (Pa. Cmwlth. 1997) (emphasis added). Liquidated damages clauses are routinely used in construction

---

[14] In *Pressey*, 84 A. 427, the contractor sued the owner for the balance owed on a construction contract. The owner defended on the assertion that construction was not completed on time. The Pennsylvania Supreme Court held that where a contractor has been paid for work beyond the contractual deadline, the owner will be deemed to have waived the contractual deadline. In *Pressey*, six payments were made after the time limit had expired, and there was no evidence to show the owner made any objection to the delay.

In *Ferro-Concrete Company*, 91 A. 506, a contractor sued the county to recover the balance of the contract price for construction of a bridge. The county retained 10 percent of the contract price as liquidated damages because the contractor did not timely complete the construction. The county never asserted any claim for liquidated damages until after the bridge had been completed. The jury found that the county had waived its right to liquidated damages, and the Pennsylvania Supreme Court affirmed the judgment.

21

contracts. *Wayne Knorr, Inc. v. Department of Transportation*, 973 A.2d 1061, 1091 (Pa. Cmwlth. 2009).

The liquidated damages amount must constitute a reasonable approximation of the expected loss "rather than an unlawful penalty." *Wayne Knorr, Inc.*, 973 A.2d at 1091. *See also* RESTATEMENT (SECOND) OF CONTRACTS, §356(1) (Am. Law Inst. 1981) (Updated October 2024) ("Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss[;] [a] term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty."). To pursue liquidated damages, the owner must prove that the contract was not completed on time, at which point the burden shifts to the contractor to show "any delays were excusable and that it should be relieved of all or part of the assessment." *Wayne Knorr, Inc.*, 973 A.2d at 1091. It is well established "that a party may not retain liquidated damages for the amount of delay caused by its own actions." *Department of Transportation v. W.P. Dickerson & Sons, Inc.*, 400 A.2d 930, 933 (Pa. Cmwlth. 1979).

Here, Section 3.3 of the AIA Standard Agreement's liquidated damages provision states, in relevant part, as follows:

> . . . .
>
> As actual damages for any delay in completion of the work in which the Contractor is required to perform under this contract are impossible of determination, the Contractor and his Sureties shall be liable for and shall pay to [the Township], [] the sum of Seven Hundred Fifty Dollars ($750) as fixed, agreed and liquidated damages for each calendar day of delay from the above stipulated for completion, or as modified in accordance with Section A201, General Conditions thereof, until such work is satisfactorily completed and accepted.

22

AIA Standard Agreement, Section 3.3; R.R. 55a. Additionally, the Supplemental Conditions to the AIA General Conditions provide as follows:

> 9.11.2     The [Township] shall have the right to deduct the total amount of any liquidated damages for which the Contractor may be liable from any monies otherwise due to the Contractor under the Contract, including any retainage held by the [Township].
>
> 9.11.3     *The Liquidated Damages are indicated in section 00-5240 of the specifications. The [Township] wishes to indicate its desire to not assess Liquidated damages and, instead, emphasizes its wish that the Contractors complete on time and cooperate with one another in the event of any deviation(s) in the schedule.*

Supplemental Conditions, Section 9.11.1-9.11.3; R.R. 117a (emphasis added).

At trial, the Township sought an award of liquidated damages. The evidence established that Contractor achieved substantial completion on May 11, 2018, or 143 days past the revised contractual substantial completion date of November 21, 2017. The Township asserted liquidated damages of $750 per day for a total of $107,250. In denying this claim, the trial court explained that "the imposition of liquidated damages must be notified in a timely manner," *i.e.*, when the delay occurs. Trial Court Op. at 19, Conclusions of Law No. 29. In this regard, the trial court relied upon *Coryell*, 75 A. 25, where our Supreme Court held that absent notice that a project delay would not be excused, the owner could not exercise the contract clause for liquidated damages.

*Coryell* concerned a municipal water system project, during which the borough required the contractor to do additional work. The contract required completion in five months, *i.e.*, by June 6, 1901, and specified liquidated damages for each day of delay to be deducted from the amount owed to the contractor. By express agreement, the completion date was extended for another five months. In

23

the end, however, the work was not completed for more than a year and a half after the expiration of the extension, for which the borough sought liquidated damages.

The evidence showed that the borough acquiesced in the delay and waited until two months after the contractor's completion of the work to notify the contractor of its intention to seek damages for the delay. The Supreme Court held that

> when, after the time of the completion of the work, the builder assents to the continuance without objection to a delay, *he will be deemed to have waived the provision as to the time of the performance*, especially when the continuance of the work is at the expressed request of the builder as upon his promise to pay therefor when completed, or when on the continuance of the work at the request or assent of the builder he makes partial payments to the contractor for work performed.

*Coryell*, 75 A. at 29 (quotations omitted) (emphasis added).

Here, the opportunity for liquidated damages is expressly provided in the contract. *See* AIA Standard Agreement, Section 3.3; R.R. 55a. Although the Township emphasized its preference not to pursue them, it did so in the case of the General Contractor. S.R.R. 1014a.[15] We agree that the Township's stated preference not to pursue liquidated damages did not operate as a waiver of the Township's right to liquidated damages.

More to the point, the contract document sets forth a process for presenting claims or disputes. The AIA General Conditions provide:

> §15.1.2 Notice of Claims
>
> *Claims by either the* [*Township*] *or Contractor must be initiated by written notice to the other party and to the Initial Decision*

---

[15] The General Contractor submitted an application and certificate for payment of $153,586.59. The Architect approved payment for $122,836.59, withholding $30,750.00 for liquidated damages for 41 days, or from December 21, 2018, to January 31, 2019. S.R.R. 1014a.

24

*Maker with a copy sent to the Architect*, if the Architect is not serving as the Initial Decision Maker. Claims by either party must be initiated within 21 days after the occurrence or event giving rise to such [c]laim or within 21 days after the claimant first recognizes the condition giving rise to the [c]laim, whichever is later.

AIA General Conditions, Section 15.1.2; R.R. 98a (emphasis added). This provision requires either party to give prompt notice to the other party and the Architect of a claim, which is defined as a demand for the "payment of money [] or other relief with respect to the terms of the [c]ontract." AIA General Conditions, Section 15.1.1; R.R. 98a. The liquidated damages clause meets this definition of "claim."[16] In sum, to initiate a claim for liquidated damages, the Township was required to give written notice to Contractor and the Architect within 21 days of the occurrence giving rise to the claim for liquidated damages. The Township did not do so.

The trial court denied the Township's request for liquidated damages because "[n]ot once during the Project did the Township assert that it was going to apply liquidated damages against [Contractor]." Trial Court Op. at 20, Conclusions of Law No. 32. This holding is consistent with *Coryell*, 75 A. at 29. *See also Pressey*, 84 A. 427, and *Ferro-Concrete Company*, 91 A. 506. This holding is also consistent with Section 15.1.2 of the General Conditions, which embodies the *Coryell* principles. The written terms of the contract required the Township to give prompt notice to Contractor of its claim for liquidated damages, and it did not do so.

We reject the Township's argument that it was entitled to liquidated damages. Irrespective of *Coryell*, the Township was contractually bound to give timely notice of its claims for liquidated damages to Contractor, and it failed to do so.

---

[16] This also applies, presumably, to Contractor's claim for delay damages.

## Conclusion

The record evidence supports the trial court's findings that Contractor provided all the required closeout documents, including the requisite insurance certificate, and that the Township did not give written notice to Contractor of any deficiencies. Contractor submitted the final payment application, and there was no basis for the Architect not to issue a certificate of final payment. In short, Contractor was entitled to final payment.

As to liquidated damages, the Township was required to give written notice to Contractor and the Architect within 21 days after the occurrence or the Township's recognition of a delay. Because it did not do so, the Township is not entitled to liquidated damages.

For these reasons, we affirm the trial court's order.

_____
MARY HANNAH LEAVITT, President Judge Emerita


Judge Fizzano Cannon did not participate in the decision in this case.

26

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Electri-Tech, Inc.     :
         :
   v.      :   No. 341 C.D. 2024
         :
Radnor Township,    :
     Appellant  :

## **O R D E R**

   AND NOW, this 17th day of June, 2025, the order of the Common Pleas Court of Lancaster County, dated February 29, 2024, is AFFIRMED.

           MARY HANNAH LEAVITT, President Judge Emerita